**Edward Wayne DON, Appellant,**

v.

**Crispus C. NIX, Appellee.**

**No. 89–1027.**

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1989.

Decided Sept. 26, 1989.

Rehearing Denied Oct. 19, 1989.

---

Ronald L. Wheeler, Des Moines, Iowa, for appellant.

Thomas D. McGrane, Des Moines, Iowa, for appellee.

Before BEAM, Circuit Judge, and HEANEY and BRIGHT, Senior Circuit Judges.

HEANEY, Senior Circuit Judge.

Edward Wayne Don was convicted of the first degree murder of police officer Douglas Bell. His conviction was affirmed on direct appeal, *State v. Don*, 318 N.W.2d 801 (Iowa 1982), and his post-conviction challenges were rejected. *Don v. State*, 404 N.W.2d 591 (Iowa Ct.App.1986). His petition for habeas corpus relief was denied by the district court. We affirm.

## I.

According to the State's theory at trial, Don stole a red Vega from a used car lot. Bell observed Don speeding and chased Don out of town. Bell pulled Don over and started to write Don a ticket. Don took Bell's gun and shot Bell repeatedly, kicking him in the face with his boot. Don returned to town and committed a series of break-ins to provide an alibi.

Another unrelated individual was originally tried for Bell's murder and was acquitted. The police, who were investigating Don for the burglaries, began to uncover evidence of Don's involvement in Bell's murder. At Don's trial, Don's girlfriend and two other witnesses testified that Don had confessed to the killing. Still another witness, Davis, had been deposed before trial and his deposition was admitted into evidence. Davis stated that while driving that night he saw a police car chasing a little red car shortly before Bell was killed, but Davis indicated that he could not identify the driver of either car. Trial Transcript vol. II at 315–17 (text of deposition). In addition, the State admitted into evidence Don's blood-stained boots and other physical evidence implicating Don in the murder. The State introduced expert analysis of the physical evidence, including fiber analysis, material analysis and geological analysis placing Don at the scene of the murder. Don's fingerprints were found on Bell's car.

## II.

On appeal, Don argues that his appointed trial counsel was ineffective for failing to object to the admission of Davis' deposi-

tion. Don urges that the Confrontation Clause of the sixth amendment entitled him to be present when the deposition was taken. We agree that Don had a right to attend the deposition because its use at trial was contemplated. We believe, however, that the error was harmless beyond a reasonable doubt.

### A.

At the outset, it is not exactly clear from the record what transpired with regard to the deposition. Davis' deposition was taken on April 8, 1980. That morning, an unrecorded hearing was held before the trial court. The transcript from the next day's proceedings indicates that Don's trial counsel renewed Don's request to be present at the taking of the depositions. In denying the request on April 9, the trial court referred to its ruling the day before and described the depositions as "discovery depositions." [1]

Davis was in poor health, however, and it was always contemplated that his deposition would be used at trial. The attorneys agreed that the defense attorney would take a discovery deposition and then the prosecutor would take an evidentiary deposition to be used at trial. At the commencement of the trial, Don's trial counsel repeated Don's objection to not being present at the depositions. He did not, however, seek any ruling from the trial court.[2] No contemporaneous objection was made to the admission of Davis' deposition, nor was Davis' unavailability questioned.

On the direct appeal of Don's conviction, Don was represented by a new attorney. The Iowa Supreme Court refused to consider whether Don's right to attend the deposition had been violated. That court concluded that the error had not been preserved at trial, noting that no constitutional basis had been urged for the objection below and that the only objection was raised on April 9, the day after Davis' deposition was taken. The appellate counsel raised the possibility of the ineffectiveness of the trial counsel, but did not predicate this claim on any failure to preserve Don's confrontation right.

Don was represented by a third attorney in state post-conviction proceedings. The Iowa Court of Appeals concluded that the confrontation claim had not been preserved at trial and that the ineffectiveness claim with respect to confrontation had not been preserved on appeal. The court proceeded to examine the record for cause and prejudice and concluded that there was no prejudice. Having exhausted his state remedies, Don sought habeas corpus relief in federal court, represented by a fourth attorney.

---

1. The following exchange occurred on April 9:

 Mr. Kutmus: Your Honor, a time has been set for depositions at this precise hour. Defendant, Eddie Don, has indicated to me that he wishes to remain next to counsel during the taking of the depositions of all of the witnesses that are scheduled for today, and they consist largely of all of them are BCI agents or DCI agents, and I respectfully ask the Court, I request the court to permit the Defendant to be present during the taking of the depositions.

 Court: Is this your desire, Ed?

 Defendant: Yes it is.

 Mr. Dutton: We have the position *as we had yesterday.* This is actually the third series of depositions taken. It would be the only series during which the defendant would be present if he were so permitted. *I know of no right, either statutory or constitutional, that the defendant has to be present,* nor do I know of any particular help that he would be to the proceedings. His presence would require the presence of a sheriff's deputy, since he is in custody, and it would complicate the situation more than it would help.

 Court: Gentlemen, *as I ruled yesterday, it is the Court's feeling that the taking of discovery depositions is not a critical stage of the proceedings* and on the resistance of the State, it is sustained, and *he need not be there during the taking of discovery depositions.*

 Transcript of pre-trial hearing at 74–75 (April 9, 1980) (District Court of Iowa, in and for Keokuk County) (emphasis added).

2. Counsel's remarks were:

 I have talked to Mr. Don earlier this morning, and Mr. Don is again protesting the fact that he was not permitted to be present at the depositions, and there have been numerous depositions taken, and Mr. Don has indicated to me he'd like the court to be aware of his opposition to that, and I've reminded Mr. Don that it was the court's order, over our protestations also. Eddie, we wanted you present, but it was court order.

 Trial transcript vol. 1 at 9.

The federal district court denied Don's petition, concluding that he was unable to show that the performance of his trial attorney had been deficient. The district court summarized Don's trial attorney's testimony from the state post-conviction proceedings:

> Don's trial attorney testified in post-conviction relief proceedings that Don, who was incarcerated in Fort Madison, asked to sit in on the Davis deposition because "it's boring in jail, he had nothing to do in jail." The attorney considered the deposition to be "innocuous," and he was confident that Don could not contribute to the taking of the deposition and that his absence would in no way affect the outcome of the case.

Memorandum Opinion at 2 (Aug. 22, 1988). The district court, relying on this testimony, concluded that the attorney had made a strategic choice not to include Don in the depositions. Thus, his performance was not deficient under the first prong of the *Strickland* test. *Strickland v. Washington*, 466 U.S. 668, 688–92, 104 S.Ct. 2052, 2064–67, 80 L.Ed.2d 674 (1984) (test for ineffective assistance is deficient performance and resulting prejudice). At our behest, counsel was appointed to assist Don on this appeal.

### B.

■ We agree with the Iowa Supreme Court that on April 9, Don's counsel failed to respond to the prosecutor's assertion that Don had no legal right to be present at the depositions scheduled that day. But in light of the repeated references on April 9 to the similar objection raised the day before, we cannot agree that an objection was not made prior to April 9, nor do we know whether, during the unrecorded proceedings on April 8, a constitutional basis was urged for Don's request. We note that when the source of a claim is apparent, a criminal defendant does not waive his constitutional claim simply because his counsel does not cite the constitution by chapter and verse. In this case, however, Don's trial counsel probably failed to tell the trial court that Davis' deposition was for use as evidence at trial, which denied the court an opportunity to properly evaluate Don's pretrial objection. Don's attorney also agreed to the deposition's admission at trial. We therefore proceed on the assumption that the confrontation claim was not preserved at trial. There are, thus, two procedural defaults in this case: one at trial with respect to the confrontation claim, the other on direct appeal for failing to allege ineffective assistance with respect to the first default.

■ We begin with the second default. Ineffective assistance of counsel is adequate to provide "cause" for a procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977) (cause and prejudice required to overcome default). We must decide if it was deficient performance for Don's counsel on direct appeal to fail to raise the possible ineffective assistance of Don's trial counsel with respect to the confrontation claim. Next, we must decide if appellate counsel's failure to raise the claim of ineffectiveness with respect to the admission of Davis' deposition caused harm sufficient to undermine our confidence in the result reached on appeal. *Cf., Strickland*, 466 U.S. at 687, 694, 104 S.Ct. at 2068. To evaluate appellate counsel's judgment, we must initially consider whether Don had a right to attend the deposition and whether his trial counsel was ineffective in failing to assert this right.

■ Don clearly had a right to attend the deposition. Except perhaps in very limited circumstances, the right to confront an accuser means precisely that; it is the right to be physically present when the accusations that the jury will hear are made. *Coy v. Iowa*, —— U.S. ——, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857, 864 (1988) (plurality); *United States v. Benfield*, 593 F.2d 815, 821 (8th Cir.1979) (videotaped testimony inadmissible). The right can be waived where a defendant is disruptive or seeks to intimidate a witness. *Benfield*, 593 F.2d at 819. It is, however, a fundamental trial right, "with a lineage that traces back to

the beginnings of Western legal culture, * * * 'essential to a fair trial in a criminal prosecution.'" *Coy,* — U.S. ——, ——, 108 S.Ct. at 2800–01, 101 L.Ed.2d at 863, 865 (quoting *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)). The presence of the defendant enhances the accuracy of the testimony. *Id.* — U.S. at ——, ——, 108 S.Ct. at 2801–02, 101 L.Ed.2d at 865–66. Because it was always contemplated that Davis' deposition would be used at trial, Don had a right to attend Davis' deposition.

We agree with the district court that Don's trial counsel did not want his client to attend the depositions. He was less than enthusiastic about asserting Don's rights. He may have failed to explain to the trial court the significance of Davis' deposition. According to the Iowa Supreme Court, he failed to preserve any error. We disagree, however, with the district court's conclusion that the trial attorney was entitled to make these choices.

 Counsel cannot waive a client's basic trial rights over the client's objections. In *Faretta v. California,* 422 U.S. 806, 812–27, 95 S.Ct. 2525, 2529–37, 45 L.Ed.2d 562 (1975), the Court upheld the fundamental right to self-representation and personal control over one's own defense, in part relying on the right to confrontation as evidence of the right to personal involvement in the conduct of the trial. *Id.* at 816, 95 S.Ct. at 2531–2532 (discussing *Snyder v. Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934)). Counsel is only permitted to make strategic choices faithful to the defendant's basic elections. For example, the right to appeal rests with the client and cannot be waived by an attorney. *Anders v. California,* 386

U.S. 738, 744–45, 87 S.Ct. 1396, 1400–01, 18 L.Ed.2d 493 (1967). Counsel, however, may exercise professional discretion in deciding which issues to raise on appeal. *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 3312–13, 77 L.Ed.2d 987 (1983). In *Jones,* the Court was careful to reiterate "that the accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal * * *." *Id.* We believe that the right to confrontation is a fundamental trial right, *Coy v. Iowa, supra,* and it cannot be waived over the defendant's objections.

 It is obvious in this case that counsel was hostile to Don's right to attend the deposition. He made a half-hearted objection on Don's behalf. His remarks at the beginning of the trial, *supra* note 2, were intended to pacify his client rather than to raise an issue for the court's consideration. When an attorney does not wish to argue a claim that his client feels strongly about, he has a duty to tell the client forthrightly so that the client can decide whether to retain a new attorney. In this case, counsel hid his lack of interest in Don's right to attend the deposition behind a courtroom statement addressed to his client and designed to lay the blame on the trial court. Hostility to the assertion of a client's rights and related obfuscation toward the client are in a fundamental sense deprivation of counsel.[3]

### C.

 To determine if Don's appellate counsel exercised less than professional judgment in not raising trial counsel's possible ineffectiveness with respect to Davis'

**3.** We are unable to find in the record any other similar conduct by the trial counsel. Were there any evidence that counsel took a similar attitude with respect to other issues, we would pause before reaching the ultimate conclusion that we reach today.

In addition, even if we were to disagree with the district court and were to conclude that Don's trial counsel acted in good faith in attempting to raise a confrontation claim, we would still find counsel's performance deficient. Nowhere does it appear on the record that coun-

sel ever told the court that the deposition was for preservation of evidence. No ruling was sought from the court after April 9. No further effort was made to keep the deposition out or to see if Davis was available. We conclude that this is deficient performance, especially in light of counsel's failure to inform the court that Davis' deposition was for preservation of evidence. Were counsel's efforts in good faith, we would proceed to examine his error for prejudice.

208

deposition, we must consider whether the admission of Davis' deposition would have been harmless error beyond a reasonable doubt had trial counsel objected properly and the trial court erred. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We conclude that little prejudice resulted from the admission of Davis' deposition. As a result, the chances for success on appeal were sufficiently slim that the appellate counsel could choose not to present this claim.

There was overwhelming evidence of Don's guilt. The most damning evidence was the testimony of three unrelated witnesses that Don confessed to the killing at three separate times. Each time the details were similar. Substantial physical evidence also placed Don at the scene of the murder. His fingerprints were on Bell's car. In addition, Bell was repeatedly kicked in the face, and the toe of Don's boot was bloodied. Davis' testimony that he saw a police car chasing a red car, both driven by unidentified persons, added little to the evidence directly connecting Don to the murder. The performance of Don's appellate counsel was thus neither deficient nor prejudicial.

### III.

Accordingly, we affirm the conclusion of the district court. We disagree, however, that Don's trial counsel had a right to waive Don's confrontation right over Don's objection. Had Davis' deposition contained any substantial information, we might reach a different conclusion. We affirm Don's conviction only because, even if the court had been solely responsible for the admission of the deposition, its admission still would have been harmless error beyond a reasonable doubt.