UNITED STATES of America, Appellee,

v.

Pedro DELGADO, Appellant.

No. 89–5504.

United States Court of Appeals,
Eighth Circuit.

Submitted June 15, 1990.

Decided Sept. 19, 1990.

William E. Maxwell, Fargo, N.D., for appellant.

Dennis D. Fisher, Fargo, N.D., for appellee.

Before BEAM, Circuit Judge, ROSS, Senior Circuit Judge, and RENNER,[*] District Judge.

ROSS, Senior Circuit Judge.

Pedro Delgado appeals from the district court's [1] order entered upon a jury verdict finding him guilty of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841, and conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Delgado was sentenced to 78 months of imprisonment. On appeal, Delgado contends, among other things, that the trial court erred in (1) overruling his objections to venue on the possession count; and (2) denying his motion for judgment of acquittal based on insufficient evidence to convict. We affirm the conspiracy conviction and reverse the possession conviction because of improper venue.

## FACTS

A conspiracy began in 1985 whereby cocaine was sent from Miami to Minneapolis for distribution in Fargo, North Dakota and Moorhead, Minnesota. A 23–count indictment charged 13 defendants; all but 2 defendants, Delgado and another, pled guilty before trial.

Juan Soto, a Minneapolis resident, used Stephen Larson as his drug courier to transport cocaine from Miami to Minnesota. In Miami, Larson was supplied by Jorge Lazo. Soto in turn supplied distributor Lazaro Lleras, who sold the cocaine in Fargo.

Larson made successive trips to Miami for the drug network. On one such trip in December of 1988, Larson met Lazo in Miami. Lazo was accompanied by the defendant Delgado, a Spanish speaking Miami resident. The three men stayed at Delgado's apartment. The next day, Delgado drove them to a cafe he operated. They were met by a source in the parking lot who delivered a package containing cocaine to Lazo. The cocaine was brought inside the cafe where the three men inspected and sampled it; however, it was disputed at trial whether Delgado partook in the sampling or whether he even knew of the existence of the cocaine. Larson then flew back to Minnesota with the drugs.

During the next three weeks, Lazo and Larson wired $9,800 to Delgado in four separate transactions. Telephone records introduced at trial showed substantial activity between numbers used by Delgado and Soto's apartment in Minneapolis.

In January 1989, Lleras, while in North Dakota, placed an order for cocaine with Soto, who again sent Larson to Miami to obtain the cocaine from the Miami connection. DEA agents followed Larson to the airport, where he purchased a one-way ticket to Miami. Lazo and Delgado met Lar-

* The HONORABLE ROBERT G. RENNER, United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

son at the Miami airport, where the same federal agents continued their surveillance. Delgado then drove Lazo and Larson to Delgado's girlfriend's trailer where the three men stayed for the night. The next day, Delgado drove Lazo and Larson to a cockfighting club where they met a source who placed a package in Delgado's trunk. Back at the trailer, the three men inspected and sampled the cocaine contained in the package. Lazo then retaped the package and placed it in his suitcase.

Delgado then drove Lazo and Larson to the airport. As Lazo and Larson boarded the plane, a drug dog reacted positively to Larson's suitcase. Lazo and Larson were then arrested at the Minneapolis airport where 2 kilograms of cocaine were seized from Larson's suitcase. A Western Union money transfer application was also seized. Soto's Minneapolis apartment was later searched and agents recovered approximately $27,000 in cash, cocaine, drug paraphernalia, and telephone address books.

Delgado claims that he was a mere observer and was not a part of the drug network. He testified at trial, through an interpreter, that because he only speaks Spanish, his conversations with Lazo and Larson were minimal. He also contends that the only reason he made the trips to the airport was because Lazo's license had been suspended and Delgado chose to drive to the airport himself rather than let Lazo drive the car without a license. Delgado explained the money transfers by testifying that the $9,800 was to be used towards the purchase of the cafe. With regard to the numerous phone calls placed to Soto, Delgado testified that Lazo was staying at Delgado's apartment and, therefore, Lazo must have made the calls. Delgado also testified that Lazo had permission to use the phone at the cafe, and was, therefore, responsible for calls placed to Soto from the cafe.

## ANALYSIS

The United States Constitution contains two provisions regarding venue in criminal cases. Article III of the Constitution[2] requires that the trial of any crime be held in the state in which the crime was committed, while the sixth amendment[3] requires that trial be by a jury of the state and district in which the crime was committed. Rule 18 of the Federal Rules of Criminal Procedure[4] also guarantees a criminal defendant the right to trial in the district where the crime was committed.

██ Proper venue is required "to ensure against the unfairness and hardship to which trial in an environment alien to the accused exposes him." *United States v. Moeckly,* 769 F.2d 453, 462 (8th Cir.1985), *cert. denied,* 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 357 (1986) (quoting *United States v. Johnson,* 323 U.S. 273, 275, 65 S.Ct. 249, 250, 89 L.Ed. 236 (1944)). In criminal cases, the issue of venue is not a mere technicality, but rather, a significant matter of public policy. *United States v. Netz,* 758 F.2d 1308, 1312 (8th Cir.1985). Unlike the other elements of a crime which must be proved beyond a reasonable doubt, venue need only be proved by a preponderance of the evidence, in the light most favorable to the government. *Id.* See also, *United States v. Black Cloud,* 590 F.2d 270, 272 n. 2 (8th Cir.1979).

██ In this case neither Delgado nor the two kilograms of cocaine ever reached the district of North Dakota. The government argues that the principal Lleras had constructive possession of the cocaine in North Dakota when he promised some of the anticipated February shipment to two of his

---

2. Article III, section 2, clause 3 provides that:
   The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed....

3. The sixth amendment provides that:
   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed....

4. Rule 18 provides:
   Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed....

Fargo distributors. Constructive possession has been defined by this court as knowledge of presence plus control. *United States v. Wajda*, 810 F.2d 754, 761 (8th Cir.), *cert. denied*, 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).

It is clear that the government's argument cannot be reconciled with our definition of constructive possession. At the time Lleras was in North Dakota, he could not have had knowledge of presence or control over cocaine which may have existed somewhere in the world and which he thought he could obtain at some time in the future. At the time Lleras left Fargo to travel to Minneapolis on February 10, 1989, there was still no constructive possession of any identifiable cocaine, because Lleras still did not have any knowledge of presence or control over it. If Lleras did, at some point gain constructive possession of the cocaine, it occurred after Lazo and Larson secured it on February 11, 1989. The evidence shows that Lleras was already in Minneapolis when this occurred.

The government submits that Delgado aided and abetted the principal Lleras. For venue to be proper in North Dakota under this theory, the government must show that the principal Lleras had both possession and intent to deliver at a time when Lleras was in North Dakota. Since it was not shown that Lleras had either actual or constructive possession of the cocaine, this theory must fail.

In *United States v. Davis*, 666 F.2d 195 (5th Cir.1982), the Fifth Circuit was faced with facts similar to the present case. In *Davis*, the court found that venue was improper as to the charges of possession with intent to distribute methaqualone, while finding that venue was proper as to conspiracy charges. The court stated:

> The government argues, without citing any cases, that although the drugs never physically entered the territorial limits of the Middle District of Georgia the offense began there because: (1) Cochran made arrangements with Mr. Davis to purchase the drugs while Cochran was in Georgia; (2) Cochran began the process of obtaining the drugs while traveling through the Middle District of Georgia; and (3) the parties intended that the drugs be returned to that district for ultimate distribution at the street level. To adopt this argument would undermine the guarantees of article III and the sixth amendment that defendants will be tried in the state and district where the crime itself was committed. The government had the burden of proving that the conspirators had both possession of and the intent to deliver the methaqualone at the time Mercer and Cochran were in the Middle District of Georgia.... This burden was not met since neither the Davises nor Cochran actually or constructively possessed the methaqualone in question until Mercer and Cochran arrived in Florida.

*Id.* at 200.

■ Here, the government argues that the crime of possession with the intent to distribute is a continuing offense under 18 U.S.C. § 3237(a) [5], and that such offense may be prosecuted in any district where the offense began, continued, or concluded. The Tenth Circuit was faced with a similar situation in *United States v. Medina–Ramos*, 834 F.2d 874 (10th Cir.1987). In *Medina–Ramos*, the court reversed convictions for possession with intent to distribute cocaine on the basis of improper venue, finding that under the continuing offense statute, the "possession must nonetheless continue in the district in which the Government seeks to prosecute." *Id.* at 877 n. 1. In the present case, application of the continuing offense statute does not authorize venue in North Dakota because Delgado was never in North Dakota, the cocaine never reached that district nor did any action constituting possession take place in North Dakota. Such acts may have oc-

---

5. 18 U.S.C. § 3237(a) provides in part:
Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

curred in Minnesota or Florida, but they did not occur in North Dakota.

■ Secondly, Delgado challenges the sufficiency of the evidence produced at trial, arguing that the trial court should have granted his motions for judgment of acquittal or for new trial based on insufficiency of evidence. In reviewing the district court's denial of a motion for acquittal, this court must consider all evidence "in the light most favorable to the government and must give the government the benefit of all reasonable inferences that may logically be drawn from the evidence." *United States v. Gleason,* 766 F.2d 1239, 1246 (8th Cir. 1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986). The verdict of the jury will be upheld where there is evidence that would allow a reasonable minded jury to conclude guilt beyond a reasonable doubt. *United States v. Rodriguez,* 812 F.2d 414, 416 (8th Cir.1987).

Because we have already determined that venue was improper as to the possession charge, we need not consider the sufficiency of the evidence regarding that charge. We therefore turn our attention to the sufficiency of the evidence supporting the conspiracy charge.

■ To convict a defendant of conspiracy, the government must show that there was an agreement among the defendants to achieve an illegal purpose. *United States v. Grego,* 724 F.2d 701, 704 (8th Cir.1984). "[T]here must be proof beyond a reasonable doubt that a conspiracy existed, that the accused knew of it, and with that knowledge, voluntarily became a part of it." *United States v. Lewis,* 759 F.2d 1316, 1352 (8th Cir.1985), (quoting *United States v. Bland,* 653 F.2d 989, 996 (5th Cir.), *cert. denied,* 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981)). The jury's verdict will be upheld where there is substantial evidence to support it. *Lewis, supra,* 759 F.2d at 1352.

■ After careful review of the evidence, in the light most favorable to the government, we find that there is substantial evidence to support the verdict of the jury regarding the conspiracy charge. The

jury made a credibility determination in favor of the government witness Larson and against the defendant Delgado. After considering the other circumstantial evidence, such as the money transfers, the phone calls, and the trips to the airport, we find that the substantial evidence test is met. Accordingly, we affirm the trial court's denial of defendant's motions for judgment of acquittal and new trial.

Thirdly, Delgado contends that the trial court incorrectly denied his motion to dismiss based on prosecutorial misconduct. Delgado argues that the government failed to disclose certain exculpatory information obtained during the debriefing of co-defendant Lazo. We are not persuaded by this argument.

■ In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), the Supreme Court held that the prosecution has a Constitutional obligation to disclose to the defense exculpatory information of which it is aware. However, this court has recognized that "[t]he rule of *Brady* is limited to the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *Nassar v. Sissel,* 792 F.2d 119, 121 (8th Cir.1986). *See also United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976). Here, the government sent defense counsel a letter following the debriefing session with Lazo disclosing the conversation as well as matters which the government felt might have been exculpatory. Because Delgado was on notice of the fact that Lazo had made these statements well before the trial even began, no *Brady* issue exists here. Furthermore, the defense could have called Lazo as a witness if it wanted to. Because of the pretrial disclosure of the material, we feel the defense suffered no prejudice. The trial court's denial of Delgado's motion to dismiss based on prosecutorial misconduct was not reversible error.

■ Fourth, Delgado argues that the jury should have been instructed that the law would mandate a five-year minimum sentence if he were convicted. Delgado contends that the jurors may have been

under the impression that the court had the power to impose a light sentence. We reject this claim. Punishment is within the province of the court. "The jury is to find guilt or innocence on the basis of the legal standards set out in the Judge's charge, and the consequence in terms of punishment is a matter for Congress on mandatory sentences or for the Court within limits fixed by the statute." *United States v. Del Toro*, 426 F.2d 181, 184 (5th Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 60 (1970).

 Fifth, Delgado disputes the trial court's instruction to the jury relating to accomplice testimony. The jury was instructed to consider the testimony of the co-defendants who pled guilty before trial, using greater caution and care than that used with ordinary witnesses, and to give the testimony as much weight as the jury thought deserving. Delgado is "not entitled to a particularly worded instruction where the instructions given by the trial judge adequately cover the substance of the requested instruction." *United States v. Czeck*, 671 F.2d 1195, 1197 (8th Cir.1982). We find the trial court's instruction more than adequate.

Finally, we have reviewed Delgado's remaining arguments on appeal, including his claims that the trial court erred in 1) denying his motion to suppress the evidence of the alleged December 1988 cocaine transaction; 2) denying his motion to remove the investigator's tabs from certain exhibits; and 3) denying his motion to strike the words "and elsewhere" from the indictment. We find these arguments to be without merit. Such issues are properly within the discretion of the trial court. The trial judge's decision will be upheld on appeal absent a clear and manifest abuse of discretion. *United States v. Lanier*, 838 F.2d 281, 285 (8th Cir.1988). We find no such abuse of discretion here.

### CONCLUSION

For the foregoing reasons, we affirm the conspiracy conviction but reverse the possession charge on the ground that venue was improper.