UNITED STATES of America, Appellee,

v.

Stanley Carter KISER, Appellant.

No. 90–2189.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1991.

Decided Oct. 16, 1991.

Robert J. Kromminga, Des Moines, Iowa, for appellant.

Ronald M. Kayser, Des Moines, Iowa, for appellee.

Before ARNOLD, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Stanley Kiser appeals from his conviction of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848(b) (1988); conspiring to knowingly and intentionally distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (1988); and nine counts of knowingly and intentionally possessing various amounts of cocaine with the intent to distribute them between July 4, 1982, and January 17, 1984, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (1988). He was acquitted of three possession counts. On appeal, Kiser argues the district court[1] erred in: (1) failing to suppress evidence obtained as the result of an illegal search and seizure; (2) denying a motion to suppress the testimony of a prosecution witness whom Kiser had identified during immunized testimony; (3) ruling that he had no standing to use the exclusionary rule with respect to cocaine seized from an employee's car; (4) denying his right to confrontation regarding certain stipulations; (5) failing to grant acquittal because the government had not proved that the counts charged in the indictment occurred in the Southern District of Iowa; and (6) failing to grant a mistrial after allegedly prejudicial evidence of weapons found in Kiser's home came into the case and after evidence not previously made known to Kiser came into the case. We affirm the judgment of the district court.

Kiser begins the factual statement in his brief by asserting that this is the most complex criminal case litigated in the Southern District of Iowa in the last dec-

---

1. The Hon. Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

ade, if not ever. Whether or not this is true, the evidence disclosed a substantial pattern of drug activity, a long chain of procedural rulings, and the entry of guilty pleas by some eight of the persons charged. Kiser evidently developed a source of cocaine in Miami, Florida, in late 1979 or early 1980, and became acquainted with the codefendant Donald Ahrens, who purchased cocaine from him and sold it in the Quad–Cities area of southeast Iowa and northwest Illinois. The court ordered the forfeiture of Kiser's real estate and sentenced him to 20 years on the continuing criminal enterprise count, 15 years on the conspiracy count, and 10 years on the possession with intent to distribute counts, all to run concurrently. Insofar as further factual details are necessary to consider Kiser's arguments, we will supply them as we consider each of the issues.

## I.

Kiser first argues that the district court erred in failing to suppress evidence seized by law enforcement officers on May 6, 1980, at O'Hare Airport in Chicago. The officers' discovery of cocaine in Kiser's luggage led to a charge under Illinois law for possession of a controlled substance. Kiser was convicted, but an Illinois Appellate Court reversed. *People v. Kiser*, 113 Ill. App.3d 501, 69 Ill.Dec. 423, 447 N.E.2d 858. The court held that the officers lacked a reasonable and articulable suspicion to detain Kiser and his luggage, and thus violated his fourth amendment rights. *Id.* 113 Ill.App.3d 501, 69 Ill.Dec. 423, 447 N.E.2d at 861. Therefore, the evidence they seized illegally should have been suppressed. *Id.*

After Kiser was indicted on federal charges, the government attorney notified him that he would seek to introduce this cocaine into evidence at his trial. Kiser filed a motion to suppress, which the district court denied, relying on *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and *United States v. White*, 890 F.2d 1413 (8th Cir.1989), *cert.*

*denied,* — U.S. ——, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990).

█ The government argues that the officers who confronted Kiser at O'Hare Airport had a reasonable articulable suspicion to detain him and his luggage. It is unnecessary to address this argument. The district court determined that the evidence seized from the luggage was admissible despite any fourth amendment violation due to the good faith exception announced in *Leon* and applied by this circuit in *White.*

In *Leon*, the Supreme Court held that the exclusionary rule should not apply to suppress evidence when an officer has acted with "objective good faith" in obtaining a search warrant ultimately determined to be invalid. 468 U.S. at 920, 104 S.Ct. at 3419.[2] The Court stated that "where the officer's conduct is objectively reasonable, 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances....'" *Id.* at 919–20, 104 S.Ct. at 3418–19 (citation omitted).

We applied the *Leon* good faith exception to an airport seizure in *White*, where we held that the officers lacked a reasonable articulable suspicion to justify detaining White or his luggage and thus violated his fourth amendment rights. *White*, 890 F.2d at 1419. Nevertheless, the officers in *White* did not open and search the luggage until they obtained search warrants, and we held that the facts were "close enough to the line of validity to make the officers' belief in the validity of the warrant objectively reasonable." *Id.*

*White* narrows the issues before us. The only question we must determine is whether the circumstances made the officers' actions objectively reasonable, which is the inquiry we conducted in *White* after determining that the seizure violated the fourth amendment. *White*, 890 F.2d at 1419. *See also Leon*, 468 U.S. at 919–24, 104 S.Ct. at 3418–21.

**2.** Because *Leon* was decided after the Appellate Court of Illinois decided *People v. Kiser,* the

*Leon* good faith exception was not available during the state proceedings.

The district court concluded that the officers unlawfully seized both Kiser and his luggage, violating his fourth amendment rights, but that under *Leon* and *White*, the facts presented a close enough question on the validity of the search warrant that reliance on the warrant could be deemed objectively reasonable.

Kiser came from the Miami/Fort Lauderdale/West Palm Beach area, a major source for cocaine and marijuana. Walking through the airport, he looked over his shoulder, stopped at a drinking fountain twice but failed to get a drink, and looked up and down the concourse while doing so. Investigation at the Budget Rental Car counter revealed that Kiser had rented a car a week before on a similar trip and was evasive about where he lived and his travel plans. He told the rental car agent he was using a credit card belonging to his father, but later told one of the officers that it belonged to a cousin. Kiser was unable to produce an airplane ticket, but the flight agent confirmed that Kiser was travelling under a fictitious name. Another officer asked Kiser why he had lied to the employee at the Budget counter about the credit card, and Kiser became nervous. It was shortly afterwards that the officers asked for Kiser's permission to open the bag, which he refused to give. The officers then told him they were going to detain the bag for examination by a narcotics detection dog. The dog made a positive sniff, leading the officers to obtain the search warrant authorizing them to open the bag.

We have no hesitation in concluding that, as in *White*, the circumstances gave the officers an objectively reasonable belief that they possessed a reasonable articulable suspicion that would make the search warrant valid. As Judge Arnold stated in *White*, the type of circumstances we cited above push this case into the gray area created by *Leon*. *White*, 890 F.2d at 1419.

 Kiser argues that this court must overrule *White*. He claims that the good faith exception of *Leon* cannot be applied to a situation where an unconstitutional detention and seizure occurred before officers obtained their search warrant. This panel is without authority to overrule the earlier panel's decision in *White*. Only the court sitting en banc has such authority. *Erickson Transport Corp. v. I.C.C.*, 741 F.2d 1096, 1098 (8th Cir.1984) (Ross, J., concurring). Were we free to reject *White*, we would refuse to do so, as we find its reasoning persuasive. The district court did not err in admitting the evidence.

## II.

 Kiser contends that the district court erred in failing to grant his motion to suppress the testimony of Alex Marrero because it was obtained directly or indirectly as a result of an immunity agreement between Kiser and the United States. Following his release from custody after being arrested on federal charges, Kiser flew to Washington, D.C., in February 1988 to give information about police corruption in Dade County, Florida, to the Office of Professional Responsibility of the DEA. He claims the DEA used the information to set up a sting that led to the arrest of Marrero, a former Metro–Dade County police officer. The district court held that the government did not derive Marrero's testimony directly or indirectly from anything Kiser said during his interview, which the DEA conducted under a grant of immunity. The district court found that the government secured the information from an independent source and clearly would have discovered the information even if the DEA had not debriefed Kiser in Washington. The district court therefore denied the motion to suppress Marrero's testimony.

In *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court held that where one gives compelled testimony under a grant of immunity, the prosecution has "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* at 460, 92 S.Ct. at 1665; *U.S. v. Harvey*, 900 F.2d 1253, 1258 (8th Cir.1990) (following *Kastigar's* requirement that evidence must come from legitimate source wholly independent of testimony given under grant of immunity),

*cert. denied,* —— U.S. ——, 111 S.Ct. 754, 112 L.Ed.2d 774 (1991). In *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the Court held that the exclusionary rule would not bar the introduction of evidence if the information "ultimately or inevitably would have been discovered by lawful means." *Id.* at 444, 104 S.Ct. at 2509. The district court based its holding on both theories.

The government introduced evidence that before Kiser's interview, an investigative file had outlined the connection between Kiser and Marrero. The government initiated no investigation based on Kiser's information, and following Kiser's interview, the investigation of Marrero continued. When three confidential informants and a wire tap resulted in the indictment of Marrero, he pleaded guilty and agreed to cooperate. The government never used or referred to any of the information Kiser gave in his interview. One of the government agents testified that Marrero's name came up in the principal investigation of Kiser in September 1985. The government believed that one of Kiser's associates sent an $8,000 money order to Marrero in 1983, and when officers arrested Kiser in July 1987, they found Marrero's business card on his person.

We are satisfied that this is sufficient evidence to carry the prosecution's burden of establishing that it obtained information from and developed testimony of Alex Marrero through legitimate sources independent of Kiser's testimony, and that it would have inevitably discovered this information by lawful means. The district court did not err in denying the motion to suppress Marrero's testimony.

### III.

Kiser argues that the district court erred in denying his motion to suppress evidence obtained through an illegal search and seizure of Steven Kurland's car on January 30, 1985. Kurland was an employee of Kiser and was driving cocaine to deliver it to another one of Kiser's employees. A third Kiser employee had placed the cocaine into the car. A Florida Highway Patrol trooper stopped Kurland for going 63 miles per hour in a 55–mile zone. The government and Kiser stipulated that the trooper had no probable cause to stop the vehicle and that there was no legal basis for the seizure of the cocaine. The district court, however, found that Kiser had no reasonable expectation of privacy in the automobile or its contents and no standing to object to the seizure.

██ Kiser bears the burden of proving he had a legitimate expectation of privacy that was violated by the challenged search and seizure. *Rawlings v. Kentucky,* 448 U.S. 98, 104–05, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois,* 439 U.S. 128, 130 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978). *See also United States v. Fahnbulleh,* 748 F.2d 473, 477 (8th Cir.1984), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2685, 86 L.Ed.2d 702 (1985). The Supreme Court has enunciated a two part test to determine whether a person has a legitimate expectation of privacy in the place searched or object seized. *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979); *California v. Ciraolo,* 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986). *See also United States v. Monie,* 907 F.2d 793, 794 (8th Cir.1990). A court must determine: (1) whether the petitioner has asserted a subjective expectation of privacy, and (2) whether the petitioner's subjective expectation is objectively reasonable. *Smith,* 442 U.S. at 740, 99 S.Ct. at 2580; *Ciraolo,* 476 U.S. at 211, 106 S.Ct. at 1811–12. The first part of the test is a question of fact that we review under a clearly erroneous standard, while the second part is a question of law, dictating de novo review. *Monie,* 907 F.2d at 794.

██ Kiser argues that he had a reasonable expectation of privacy in the contents of the automobile. Kiser boldly asserts that he:

> most certainly possessed a reasonable expectation of privacy that an automobile he directed an employee to load with three kilograms of cocaine secreted in the automobile, and directed another employee to drive this automobile and deliver its contents to a third employee in

California would be free from the constitutionaly [sic] impermissable [sic] seizure by Trooper Stallworth.

Kiser cites the following facts to support his claim. The cocaine belonged to Kiser. One of Kiser's employees placed the cocaine into the car in such a way as to avoid detection by anyone. The car belonged to another Kiser employee, Kurland, who was to deliver the cocaine to a third employee. Kiser may have facilitated the transfer of title of the car to Kurland.

We are not convinced that Kiser, by his conduct, exhibited an actual, subjective, expectation of privacy, or that he showed that he sought to preserve the cocaine as private. *Smith*, 442 U.S. at 740, 99 S.Ct. at 2580. Kiser did not personally load the cocaine into the trunk of the car, nor is there evidence that he wrapped up the cocaine. While the evidence indicates that his employees carried out these acts, legitimate privacy expectations of others may not be vicariously asserted. *United States v. Salvucci*, 448 U.S. 83, 86, 100 S.Ct. 2547, 2550, 65 L.Ed.2d 619 (1980) (citing *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969)). The record fails to prove that Kiser exhibited a subjective expectation of privacy in the trunk of Kurland's car.

Further, even if Kiser had a subjective expectation of privacy, we refuse to hold that it was objectively reasonable. In *United States v. Macklin*, 902 F.2d 1320 (8th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 689, 112 L.Ed.2d 680 (1991), we stated: "In *Rakas*, the Supreme Court held that because fourth amendment rights are personal and cannot be vicariously asserted ... a person has no reasonable expectation of privacy in an automobile belonging to another." *Id.* at 1330 (citation omitted). In *Fahnbulleh*, we held that the defendants:

fail[ed] to establish any basis for their asserted privacy expectation because they did not own nor have any possessory interest in the vehicle which was searched, were absent at the time of the search, ... did nothing to protect their asserted privacy interest, and failed to show that they were aware their cocaine would be in the trunk of the car driven by [another].

748 F.2d at 477 (citations omitted). *See also Macklin*, 902 F.2d at 1330 ("to have a legitimate expectation of privacy by way of a possessory interest, defendant must have possession of the vehicle and the keys.").

*Fahnbulleh* controls. Kiser did not possess or have title to the car, and was not present when the trooper searched the trunk in January 1985. Kurland did testify that he made earlier trips for Kiser using the same car before it was titled in Kurland's name. Kurland stated that Kiser delivered the car and keys to his apartment before Kurland's first delivery trip a year earlier in January 1984, but Kurland did not know who actually owned the car. Kurland also testified, and other evidence verified, that Vicky Ahrens had title to the car immediately before Kurland obtained title. While Kurland's testimony indicates that Kiser may have had some type of possessory interest or control over the car, it does not rise to a sufficient level to give Kiser an objective expectation of privacy in the vehicle. Under the *Smith* analysis, the district court did not err in determining that Kiser has no standing to challenge the illegal search of Kurland's vehicle.

Kiser, to support his claim that he has standing to challenge the search of Kurland's car, relies on *United States v. Garcia*, 897 F.2d 1413 (7th Cir.1990), and *United States v. Broadhurst*, 805 F.2d 849 (9th Cir.1986). These cases are both distinguishable and unpersuasive. The *Garcia* holding was based on the fact that the defendant rightfully *possessed* the searched vehicle. 897 F.2d at 1417–19. The Ninth Circuit in *Broadhurst* enunciated a joint venture/co-conspirator exception to the standing rules announced by the Supreme Court. *Broadhurst* held that there was "a formalized, ongoing arrangement between all six defendants for the cultivation of marijuana in [a] greenhouse." 805 F.2d at 852. Even if this were such a case, we would decline to adopt this exception recognized by only the Ninth Circuit.

## IV.

■ ] Kiser contends that he was denied his right of confrontation when his trial counsel stipulated to the authenticity of and foundation for business records over his objection. The district court found that Kiser's counsel, Mark Pennington, had the authority, within his professional judgment, to make the stipulations and waive requirements for foundation, regardless of his client's disagreement.

Kiser relies on *Don v. Nix*, 886 F.2d 203 (8th Cir.1989), in which we held that a defendant's right of confrontation is fundamental and cannot be waived over his objection. *Id.* at 207. While Kiser may have been deprived of this right, we hold, similarly to the panel in *Don*, that it was harmless error beyond a reasonable doubt. *Id.* at 208. The stipulations related to the foundation and authenticity of business records of institutions, including car rental companies, motels, Western Union, Merrill Lynch, VISA, Diners Club, American Express, and records of government offices regarding titles and bank records. Moreover, Pennington reviewed all the exhibits subject to the proposed stipulation and then objected to certain exhibits and had corrections made to them. He determined that the subjects of the stipulations were foundation witnesses, and admitted that he had no good faith basis to doubt the authenticity of the records, or to conduct cross-examination. In fact, he did not believe it was in his client's best interest to force the government to call the foundation witnesses, and concluded that there should be a waiver of undisputed facts which "bore no basis for a defense."

We conclude that Kiser was not prejudiced by his counsel's stipulations regarding the foundation evidence: "It might well have been advantageous trial tactics not to dispute the indisputable." *United States v. Martin*, 489 F.2d 674, 678 (9th Cir.1973), *cert. denied*, 417 U.S. 948, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974).

## V.

Kiser contends that the district court erred in failing to grant his motion for judgment of acquittal because the government failed to prove that the counts charged in the indictment occurred in the Southern District of Iowa.

■ ] The government bears the burden of proving venue by a preponderance of the evidence, *United States v. Delgado*, 914 F.2d 1062, 1064 (8th Cir.1990), *United States v. Netz*, 758 F.2d 1308, 1312 (8th Cir.1985) (per curiam), and may establish it by either direct or circumstantial evidence. *Netz*, 758 F.2d at 1312. Proper venue lies in the district where the alleged offense was committed. Fed.R.Crim.P. 18. If the offense was begun in one district and completed in another, or committed in multiple districts, the government may try the case in any district where the offense was "begun, continued, or completed." 18 U.S.C. § 3237 (1988). This circuit has recognized possession of drugs with intent to distribute to be a continuing crime, *see Delgado*, 914 F.2d at 1065–66. The defendant does not have to actually possess the contraband; constructive possession is sufficient. *United States v. Salinas–Salinas*, 555 F.2d 470, 473 (5th Cir.1977). A person is in constructive possession if he has "knowledge of presence plus control" over the item or items. *United States v. Wajda*, 810 F.2d 754, 761 (8th Cir.), *cert. denied*, 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987). *See also Salinas–Salinas*, 555 F.2d at 473 ("Constructive possession may be shown by ownership, dominion or control over the contraband itself...").

■ The record is replete with instances in which Kiser specifically engaged in the possession and distribution of cocaine in the Southern District of Iowa, either personally, or through his employees. For example, the evidence shows that all the cocaine Kiser distributed came from his established source in Miami, and that either Kiser or his employees would transport shipments into Iowa, among other states. Ricky Wilson testified that he and Kiser were bringing cocaine to Iowa from Miami when they were intercepted by law enforcement officials at O'Hare Airport in Chicago. Various witnesses testified that they made trips from Miami, under Kiser's direction, to deliver cocaine to various associates of Kiser in Davenport, Iowa. Michael

Harrison testified that, during his participation in the conspiracy, Kiser and two of his associates brought cocaine both to his trailer and residence for eventual distribution in the Davenport, Iowa, region. Jeff Jacobs testified that Kiser selected his drug couriers and determined what their travel arrangements and payments would be for trips made from Miami to Davenport. Gordon Coon testified that, while he was in Vail, Colorado, Kiser gave him a pound of cocaine to take to Davenport to sell; that Coon did so, and gave Kiser the proceeds of the sales when Kiser returned to Davenport. Alex Marrero testified that Kiser had said he did most of his business in Iowa because that was where he "made most of his money." This brief catalog of evidence merely highlights a record filled with ample evidence to establish that events for which Kiser was indicted began, continued, or were completed in the Southern District of Iowa. The district court did not err in denying Kiser's motion for judgment of acquittal based on improper venue.

### VI.

Kiser argues that the district court should have declared a mistrial after the jury heard evidence that weapons were found at Kiser's Colorado home. The district court had ordered the government not to introduce evidence of guns U.S. Marshals discovered while seizing Kiser's property. The government, however, played a videotape on which it had failed to blank out an audio portion containing the statement, "In the bedroom we found numerous weapons." Kiser moved for a mistrial, which the district court denied, because the mention of weapons was not so prejudicial as to deny Kiser a fair trial. We reverse such rulings only if we determine that the court abused its discretion. *United States v. O'Connell*, 841 F.2d 1408, 1427 (8th Cir. 1988), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 893 (1988); 488 U.S. 1011, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). A witness for the prosecution had discussed Kiser's possession and use of weapons without objection. Thus, the later reference to weapons, inadvertently introduced to the jury, was not so prejudicial as to deny Kiser his right to a fair trial. The

district court did not abuse its discretion in denying Kiser's motion for a mistrial.

### VII.

Finally, Kiser asserts that the district court erred in failing to grant his motion for a mistrial made after the government introduced evidence that had not been made known to him in a bill of particulars. The evidence related to two occasions of Kiser's involvement with the social use of cocaine. The district court found that these incidents were not in the nature of an overt act furthering the conspiracy, and that Kiser had adequate time to prepare to meet the evidence in question. We cannot conclude that the district court abused its discretion in refusing to grant Kiser's motion for a mistrial, nor do we see any demonstration of prejudice.

We affirm the judgment of the district court.