_____

No. 96-1363
_____

United States of America,      *
                               *
               Appellee,       *
                               *  Appeal from the United States
     v.                        *  District Court for the
                               *  Southern District of Iowa
Michael Dale Fletcher,         *
                               *
               Appellant.      *


_____

          Submitted:  June 10, 1996

            Filed:  July 24, 1996
_____


Before WOLLMAN, Circuit Judge, HENLEY, Senior Circuit Judge, and  DOTY[*],
District Judge.

_____

DOTY, District Judge.


     Michael D. Fletcher ("Fletcher") appeals his conviction on a charge
of conspiracy to distribute methamphetamine in violation of 21 U.S.C.
§ 846.  The issue on appeal is whether the district

_____

     [*]The HONORABLE DAVID S. DOTY, United States District
        Judge for the District of Minnesota, sitting by
        designation.

court[1] erred in denying Fletcher's motion to suppress evidence. We affirm.

## I.

The material facts surrounding the detention of Fletcher's bag are not in dispute and are hereafter reported as found by the district court. On July 4, 1995, Fletcher purchased a round-trip ticket on America West Airlines ("AWA") from Des Moines, Iowa to Phoenix, Arizona, for $561 cash. He flew to Phoenix as scheduled on July 4. Although he was scheduled to return on July 7, he changed his return flight to July 6. Despite the scheduled change, Fletcher did not return to Des Moines on July 6, but returned on July 7.

On July 7, Fletcher arrived at the Phoenix airport shortly before his flight time and checked one bag. Due to his late arrival, he was informed that his bag might not make his flight and might arrive in Des Moines on a later flight. Fletcher left a telephone number where he could be reached in Des Moines. Upon arrival at the Des Moines airport, he quickly exited the plane and walked briskly ahead of his fellow passengers to the restroom. Fletcher's actions were noticed by Officer Lynn Aswegan, a plain clothes police officer assigned to the Des Moines Metropolitan Task Force. While Fletcher was in the restroom, a public address announcement was made that a white pick-up truck with Arizona license plates was illegally parked outside of the terminal. After

---

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

the announcement, Fletcher exited the restroom with what Officer Aswegan described as a "worried look" and walked directly to the vehicle described. Officer Aswegan and his partner, Officer Randy DePhillips, followed Fletcher.

Fletcher tried to get into the pick-up truck, but the doors were locked. Fletcher then went back into the terminal and had a brief conversation with two women. The officers noted the Arizona license plates and the supplemental gas tanks, at times used for concealing drugs, before continuing their surveillance of Fletcher. Fletcher then proceeded to the baggage claim area with one of the women and was informed that his bag had not arrived but would most likely be on the next flight from Phoenix arriving late that evening. Fletcher left the airport in the white pick-up truck "extremely fast."

Officers Aswegan and DePhillips approached an AWA ticket agent and learned that the individual they had observed was Michael Dale Fletcher. The agent told the officers that Fletcher had been scheduled to arrive in Des Moines on July 6, but had not shown up for that flight and instead had purchased a one way ticket on July 7 from Phoenix to Des Moines for $561 cash. The ticket agent also gave the officers the Des Moines telephone number that Fletcher had left with the airline. The telephone number belonged to Michelle Robertson at 1212 East 27th Court in Des Moines.

Officers Aswegan and DePhillips drove past this address and observed the white pick-up truck with Arizona plates in the driveway. A police records search of the address disclosed that a

caller had previously reported heavy traffic at the residence and suspected drug activity. The call was investigated but surveillance had not revealed any narcotics related activity.

Officers Aswegan and DePhillips returned to the airport that evening with Officer Ted Cobine to observe Fletcher pick up his bag. Officer Mike Stueckrath and Officer DeJoode, along with Oby, a drug sniffing dog, were also at the airport.

Fletcher returned to the airport and received his bag from an AWA ticket agent. He set the bag down, opened it briefly, closed it and started to leave the ticket area. At this point, Fletcher was approached by Officers DePhillips and Cobine. The officers identified themselves and asked if Fletcher would speak to them. He agreed and, upon request, produced identification which matched the name on his luggage. During the conversation, Fletcher told the officers that he had a round trip ticket, information that conflicted with the officers' information. The officers asked Fletcher if they could search his bag. Fletcher agreed but then asked if he had to consent to the search. Fletcher revoked his consent when he was informed that he had a right to withhold consent. At that point Fletcher was told that he was free to leave but his bag would be detained for a dog sniff. Fletcher's bag was placed with other baggage, Oby was brought in and alerted on Fletcher's bag. Fletcher was informed of the positive alert, told again that he was free to go but that his bag would be detained while a search warrant was secured. Fletcher left the airport. The officers applied for and obtained a search warrant. A search of the bag revealed methamphetamine inside a stereo speaker.

Fletcher moved to suppress the methamphetamine found in his bag. Following an evidentiary hearing, the district court denied the motion to suppress. The district court held that the detention of Fletcher's bag was not supported by a reasonable articulable suspicion of criminal activity, thus, the detention violated the Fourth Amendment. Because the search that Fletcher challenged was authorized by a warrant, however, the district court analyzed the suppression motion under the standards set forth in United States v. Leon, 468 U.S. 897 (1984), and concluded that suppression was not warranted because the facts of the case were "close enough to the line of validity to make the officers' belief in the validity of the detention and the validity of the search warrant objectively reasonable." We review the district court's conclusion regarding the objective reasonableness of the officers' reliance on the validity of the detention and the validity of the warrant de novo. United States v. Green, 52 F.3d 194, 197 (8th Cir. 1995) (standard of review for reasonable suspicion determination); United States v. Jackson, 67 F.3d 1359, 1366 (8th Cir. 1995) (standard of review regarding application of the good faith exception under Leon), cert. denied,116 S. Ct. 1684 (1996). The district court's finding of good faith will not be set aside unless clearly erroneous. Jackson, 67 F.3d at 1366.

## II.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Police detention of an individual or their luggage without a warrant conforms to the Fourth Amendment only where there exists reasonable suspicion,

supported by articulable facts, that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 20-23 (1968); United States v. Place, 462 U.S. 696, 708 (1983). As has so often been stated, reasonable suspicion is more than an officer's inchoate or unparticularized hunch. Terry, 392 U.S. at 27. Rather, the police officer must point to particularized facts, and the rational inferences that may be drawn, which, viewed together and in light of the officer's experience, suggest illegal conduct. United States v. Sokolow, 490 U.S. 1, 7-8 (1989); United States v. Weaver, 966 F.2d 391, 394 (8th Cir.), cert. denied, 506 U.S. 1040 (1992).

The officers who detained Fletcher's bag relied on the following circumstances: (1) Fletcher arrived from Phoenix, a drug source city; (2) he was first off the plane (3) and proceeded directly to the restroom; (4) he was connected to a white pick-up truck with supplemental gas tanks and Arizona license plates; (5) he told the police he had a round trip ticket when the officers believed he had a one way ticket purchased with cash; (6) Fletcher withdrew his consent after initially agreeing to a search; and (7) he was associated with a woman at a local address where a narcotics complaint had been made. The district court held these facts were insufficient to support a reasonable suspicion that Fletcher was engaged in illegal activity. We agree. Each factor, save the perception of lying and the association with someone who had a previous, though ultimately unsubstantiated narcotics complaint lodged against her, is as consistent with innocent activity as with criminal conduct. Moreover, under these facts, no adverse inference can be drawn from Fletcher's revocation of his consent to search his bag. When Fletcher consented, he did not

understand that he had the right to withhold consent.  But cf. United States v. Weaver, 966 F.2d 391, 393 (8th Cir. 1992) (noting the defendant initially consented and then changed his mind); United States v. Green, 52 F.3d 194, 200 (8th Cir. 1992) (relying on Weaver: "Weaver's initial consent and the manner in which he withdrew his consent contributed to the officer's reasonable articulable suspicion.").  Here, there was nothing suspicious in the manner in which Fletcher revoked his consent.  Considering all circumstances, the officers' information fell short of establishing reasonable suspicion.  The detention of  Fletcher's bag for a dog sniff thus violated Fletcher's Fourth Amendment rights.

The district court correctly noted, however, that its inquiry did not end with that determination.  In United States v. Leon, 468 U.S. 897 (1984), the Supreme Court held that evidence seized pursuant to a warrant, even if obtained in violation of the Fourth Amendment, should not be excluded if an objectively reasonable officer could have believed the search was valid.  Id. at 918 ("[S]uppression of evidence obtained pursuant to a warrant should be ordered on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.").  This circuit has held Leon applicable to the subsequent  warrant-authorized search of a bag where the original detention violated the Fourth Amendment.  United States v. White, 890 F.2d 1413, 1419 (8th Cir. 1989), cert. denied, 498 U.S. 825 (1990); United States v. Kiser, 948 F.2d 418 (8th Cir. 1991), cert. denied, 503 U.S. 983 (1992); see also United States v. O'Neal, 17 F.3d 239, 243 n.6 (8th Cir. 1994) (discussing White).  The relevant inquiry is whether the facts surrounding reasonable suspicion are "close

enough to the line of validity" that the police officers were entitled to a belief in the validity of the warrant and the existence of reasonable suspicion.  White, 890 F.2d at 1419.  If the case presents such a "close" question, the Leon good faith exception to the exclusionary rule should be considered.  O'Neal, 17 F.3d at 243 n.6 (noting that this consideration is not automatic, rather "[i]t is the closeness of the particular facts that push[ed] this case into the gray area created by Leon.")(citation omitted).

This case is indeed within the gray area of Leon.  Reasonable suspicion is a fact-based determination where "similar fact patterns [can] led to different results."  O'Neal, 17 F.3d at 241 (citing United States v. Weaver, 966 F.2d 391 (8th Cir. 1992) and United States v. Millan, 912 F.2d 1014 (8th Cir. 1990)); see also United States v. Sokolow, 490 U.S. 1, 13 (1989) (Marshall, J. dissenting).  Here, many facts identified were consistent with innocent behavior, but some weight should be accorded the inferences drawn from Fletcher's travel origins, the supplemental tanks on the out-of-state vehicle and the same day cash ticket purchase.  Moreover, two very probative facts supported the officers' suspicion:  the perception that the officers held that Fletcher lied to them about his travel itinerary[2] and that he was associated with an individual and an address where once a narcotics complaint had been filed.  Considered together, while falling short of Fourth Amendment requirements, we conclude that the officers had

_____

[2]  Though the officers' information regarding the one way ticket was wrong, we must evaluate the circumstances as known to the officers at the time of the decision to detain the bag.

-8-

more reason to suspect that Fletcher's bag contained narcotics than the officers in either <u>United States v. White</u>, 890 F.2d 1413 (8th Cir. 1989), or <u>United States v. Kiser</u>, 948 F.2d 418 (8th Cir. 1991). Both cases were so close to the line of validity as to warrant application of <u>Leon</u>.

In <u>White</u>, drug agents relied upon the following: White traveled from a source city, Los Angeles, arriving early in the morning on a flight that had previously yielded narcotics arrests by way of a ticket purchased with cash. White also appeared nervous when questioned by the police and clutched his carry-on bag in a nervous or unusual manner. <u>White</u>, 890 F.2d at 1414-1415. In <u>Kiser</u>, officers relied on the fact that Kiser traveled from Miami, another source city, and looked around while stopping at a drinking fountain but failed to take a drink. On a similar trip a week earlier, Kiser had rented a car and had been "evasive" about his plans and address. Kiser also provided inconsistent information to rental agents about the name on his credit card, could not produce an airplane ticket, became nervous when questioned and refused to give his consent to search his bag. <u>Kiser</u>, 948 F.2d at 422. While neither case supported a finding of reasonable suspicion, both were "close to the line of validity." Similarly, we conclude that the facts presented here are sufficiently close to the line of validity. Considering all circumstances, we agree with the district court that the officers had an objectively reasonable belief that they possessed a reasonable suspicion such as would support the valid detention of Fletcher's bag as well as an objectively reasonable belief that the warrant issued was valid.

Notwithstanding this conclusion, Fletcher argues that the evidence seized should be suppressed because its exclusion will further the deterrent purposes of the exclusionary rule.  We disagree.  None of the factors which bar application of the <u>Leon</u> good faith exception exist in this case.  <u>See</u> <u>Leon</u>, 468 U.S. at 923.  Here, the officers collected information to corroborate their suspicions before approaching Fletcher by conducting additional surveillance and checking police records.  The district court held that the officers' belief in the validity of the detention and warrant was not only objectively reasonable, but also in good faith.  Based on a review of the record, no facts suggest that this finding is clearly erroneous.  The purpose of the exclusionary rule, deterrence of police misconduct, will not be served by its application to this case.

### III.

For the foregoing reasons, we conclude the district court did not err in denying Fletcher's motion to suppress the methamphetamine seized from his bag.  The decision of the district court is upheld.  Fletcher's conviction is affirmed.

A true copy.

Attest:

Clerk, U.S. Court of Appeals, Eighth Circuit.