**UNITED STATES of America, Plaintiff,**

v.

**Santiago QUIROZ (01), and Nicolas Vasquez (02), Defendants.**

**No. CR 99–55 (RHK/JMM).**

United States District Court, D. Minnesota.

June 21, 1999.

Rabea Jamal Zayed, Asst. U.S. Atty., Minneapolis, MN, for U.S.

Scott F. Tilsen, Asst. Fed. Public Defender, Minneapolis, MN, for Defendants.

## ORDER

KYLE, District Judge.

Before the Court are the Objections of Defendants Quiroz and Vasquez to the two Reports and Recommendations of Magistrate Judge John M. Mason. The Objections have been briefed and are now ready for resolution.

This Court has made the required *de novo* review of the Objections and concluded that Judge Mason properly resolved each of the issues before him. His factual recitation is thorough and his legal analysis sound. Accordingly, the Court will adopt the recommendations of Judge Mason.

Upon all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. The Objections (Doc. Nos. 49, 50, 51) filed on behalf of each Defendant are **OVERRULED;**

2. Each Report and Recommendation (Doc. Nos. 45 and 47) is **ADOPTED;**

3. Defendant Quiroz's pretrial Motions to Suppress All Electronic Surveillance Evidence and Any Evidence Derived Therefrom (Doc. No. 19); to Suppress Physical Evidence (Doc. No. 20); to Suppress Statements Made by Defendant (Doc. No. 21); to Suppress Identifications of Defendant Obtained as a Result of Any Illegal Searches, Seizures, Interrogations, or Identification Procedures (Doc. No. 22); to Suppress Evidence Obtained as a Result of Illegal Search or Seizure (Doc. No. 23); and for Severance of Defendants (Doc. No. 24) are **DENIED;**

4. Defendant Vasquez's pretrial Motions for Severance of Defendants (Doc. No. 28); to Suppress Physical Evidence Obtained as a Result of Any Illegal Searches or Seizures (Doc. No. 30); and to Suppress Statements Made by Defendant (Doc. No. 31); and to Suppress Identifications of Defendant (Doc. No. 32) are **DENIED.**

## *REPORT AND RECOMMENDATION*

Defendant Nicolas Vasquez ("Defendant") is charged with Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A) (Count I); and Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841(a)(1); 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 2 (Count II).

The matter came before the Court on April 27, 1999 for hearing on Defendant's pretrial Motions for Severance of Defendants [Docket No. 28]; to Suppress Physi-

cal Evidence Obtained as a Result of any Illegal Searches and Seizures [Docket No. 30]; to Suppress Statements Made by Defendant [Docket No. 31]; and to Suppress Identifications of Defendant [Docket No. 32]. Rabea Jamal Zayed, Esq., Assistant United States Attorney, appeared on behalf of the United States of America; Scott F. Tilsen, Esq., Assistant Federal Public Defender, and Minnie Alexander, Esq. appeared on behalf of Defendant, who was personally present.

For the reasons stated herein, this Court recommends that:

1. Defendant's pretrial Motion to Suppress Identifications of Defendant [Docket No. 32] be denied as moot based on the representations of the Government.

2. Defendant's pretrial Motions for Severance of Defendants [Docket No. 28]; to Suppress Physical Evidence Obtained as a Result of any Illegal Searches or Seizures [Docket No. 30]; and to Suppress Statements Made by Defendant [Docket No. 31] be denied.

## FINDINGS OF FACT/REPORT

### Discussion

### I. *Motion to Suppress Physical Evidence*

Defendant's Motion to Suppress Physical Evidence [Docket No. 30] seeks suppression of items obtained in connection with: (1) the interception, examination and search of a Federal Express package at the Minneapolis–Saint Paul International Airport; (2) the search of a residence located at 2930 18th Avenue South, Minneapolis, Minnesota; and (3) the search of a maroon Oldsmobile parked in the closed garage located at 2930 18th Avenue South, Minneapolis, Minnesota.

### A. *Search of Federal Express Package*

### 1. *Factual Background*

Based upon the testimony and Exhibits received at the April 27, 1999 Evidentiary Hearing, the relevant facts upon which

Defendant's challenge to the search of the Federal Express package are set forth as follows. On February 5, 1999, Officers Bruce Giller and Haans Vitek sought to interdict suspicious packages at the Federal Express parcel sorting station at the Minneapolis Saint Paul International Airport. To effectuate this objective, each police officer stood across from one another as a conveyor belt brought packages into the sorting area. The officers examined the exterior of the packages, as well as the air-bill attached to each. From time to time a package would be set aside while an on-site drug sniffing dog attempted to detect the presence or absence of odors consistent with narcotic substances.

At approximately 8:00 a.m., a Federal Express employee brought a non-deliverable package to Officer Giller's attention. This package was addressed to "Santiago Quiroz" at 435 Bloomington, # 112, Minneapolis, MN 55407. The package was placed among others and officer Mark Meyer subjected it to a "sniff test" by "Mindy," a drug sniffing dog. After sniffing various packages, Mindy detected the odor of a narcotic substance emanating from the parcel. It was held and detained while police obtained a warrant to search its contents. Upon execution of the search warrant at 11:00 a.m., police discovered approximately four pounds of a substance later identified as methamphetamine.

Defendant contends that evidence obtained from the search of the Federal Express package must be suppressed because police did not have a reasonable basis upon which to detain the package for investigation. Defendant argues that "[b]ecause the Fourth Amendment does not allow police officers to randomly stop and investigate packages sent through the U.S. Mails or private couriers, the evidence seized in this stop of a Federal Express package should be suppressed." Defendant's Memorandum in Support of Motion to Suppress, at 2. For the following reasons, we recommend that Defendants' Motions to

suppress evidence obtained from the Federal Express package be denied.

### 2. *Analysis*

■ "The Fourth Amendment prohibits unreasonable searches and seizures." *United States v. Miller,* 152 F.3d 813, 815 (8th Cir.1998). This precept applies to items placed in the mail. *United States v. Johnson,* 171 F.3d 601, 603 (8th Cir.1999) (*citing United States v. Van Leeuwen,* 397 U.S. 249, 251, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970)). The instant case involved the search of a Federal Express package as opposed to a United States Postal service package. This distinction, however, does not limit Fourth Amendment protection. *See United States v. LaFrance,* 879 F.2d 1, 4 (1st Cir.1989) ("A sealed package entrusted to a private parcel service is 'unquestionably an "effect" within the meaning of the Fourth Amendment.' *United States v. Jacobsen,* 466 U.S. 109, 114, 104 S.Ct. 1652, 1657, 80 L.Ed.2d 85 (1984).")

#### a. There Was No Search

■ The Supreme Court has enunciated the test for when a "search" occurs within the meaning of the Fourth Amendment:

"A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed."

*United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984).

■ The parties do·not contend that a "search" occurred here. It is well established that a dog sniff does "not constitute a search and thus [does] not implicate the Fourth Amendment." *United States v. Place,* 462 U.S. 696, 709, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *United States v. Harvey,* 961 F.2d 1361, 1363 (8th Cir.1992), *cert. denied,* 506 U.S. 883, 113 S.Ct. 238, 121 L.Ed.2d 173 (1992).

#### b. There Was No Unlawful "Seizure"

■ The Supreme Court has also described the circumstances which constitute a "seizure" as follows:

"A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."

*Jacobsen,* 466 U.S. at 113, 104 S.Ct. at 1656. Neither Defendant contends that the Federal Express package was unlawfully seized. The evidence of record contains no basis upon which to conclude that the package was seized until Mindy "alerted" to the presence of drugs inside it.

#### c. There Was No Unlawful "Detention"

Courts have determined that in some cases, persons or property may be detained for a period of time, without a warrant and with less than the probable cause required to justify a search or seizure. As to persons, the reasoning is explained in *Terry v. State of Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As to property, see *United States v. Van Leeuwen,* 397 U.S. 249, 90 S.Ct. 1029, 25 L.Ed.2d 282 (1970); *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); and *United States v. LaFrance,* 879 F.2d 1 (1st Cir.1989). Courts have sometimes adopted the shorthand expression of a "stop" or a "detention" to describe the circumstance where the interference is not sufficiently meaningful to conclude that a "search" or "seizure" has occurred, but is sufficient to require justification.

Defendants contend: "To justify the brief detention of a package for purposes of subjecting it to a sniff search by a drug detection dog, there must be a reasonable suspicion that the package contains contraband." Defendant Vasquez's Memorandum In Support of Motion to Suppress, at 3–4 (*citing United States v. Dennis,* 115 F.3d 524, 531–32 (7th Cir.1997)). Defendant's view is phrased in similar fashion in other ́argument. *See* Defendants' [Supplemental] Memorandum in Support of Motion to Suppress, at 2: ("Before a law enforcement officer can detain a package, even if only for purposes of subjecting it to a sniff test, he must possess a reasonable

suspicion of criminal activity based on articulable facts.") *See also* Defendants' [Supplemental] Memorandum at 6: ("However, an investigatory detention, *no matter how short*, must be supported by a reasonable suspicion of criminal activity based on articulable facts." *** "Before an officer may detain a package for investigation, the officer must possess a reasonable suspicion that a package contains contraband.") (emphasis supplied).

■ These statements are not correct. They overlook the fact that in many circumstances, "not even a reasonable suspicion test need be met"[1] because the interference with an individual's possessory interest in the property is so incidental as to not invoke Fourth Amendment protection. A number of cases illustrate the factual situations in which it has been held that there is no requirement to justify the minimal intrusion of the governmental agent on the possessory interests of the owner of the property. While these cases focus upon whether a "seizure" of property has occurred, their holdings indicate that not even reasonable suspicion was necessary to justify the detention. One of the leading cases is *United States v. Harvey*, 961 F.2d 1361 (8th Cir.), *cert. denied*, 506 U.S. 883, 113 S.Ct. 238, 121 L.Ed.2d 173 (1992). There, police and a drug sniffing dog named "Jupp" boarded a bus after it stopped at a station in Arkansas. As Jupp walked down the aisle, he alerted to the presence of narcotic substances above his head. Police opened the overhead baggage doors, removed a few of the bags, and placed them on the floor of the bus for Jupp to sniff. Jupp again "alerted" to two of the bags. Police spoke with the defendants—the owners of the two bags—after they re-boarded the bus. Each defendant eventually consented to a search of the bags, which revealed large quanti-

ties of marijuana. Each defendant challenged the admissibility of the evidence, arguing that "some degree of individualized suspicion is required to satisfy the requirements of the Fourth Amendment." *Harvey*, 961 F.2d at 1362.

The court rejected this argument, noting that the baggage "was moved from one public area, the overhead baggage area, to another, the aisle." *Harvey*, 961 F.2d at 1363. The court observed that the defendants "left their baggage unattended, and that the temporary removal of the bags caused no delay to appellants' travel." *Harvey*, 961 F.2d at 1363–1364. Further, the defendants were unaware that the canine sniff even occurred, or that their itinerary would have been disrupted if the dog sniff had not detected contraband. The court concluded that "because there was no meaningful interference with appellants' possessory interests in their baggage, we hold that no seizure occurred." *Harvey*, 961 F.2d at 1364.

Other courts have also found that no reasonable suspicion is necessary to effect a limited detention and dog sniff of baggage or items sent via express mail. *E.g. United States v. Guzman*, 75 F.3d 1090, 1094 (6th Cir.), *cert. denied*, 519 U.S. 906, 117 S.Ct. 266, 136 L.Ed.2d 190 (1996) (noting that "if the defendant had no reasonable expectation of privacy in his bag to begin with, then the officer's touch of defendant's bag was not a search or seizure under the Fourth Amendment regardless of whether the officer had reasonable suspicion or no suspicion when he touched the bag"); *United States v. Johnson*, 990 F.2d 1129, 1132 (9th Cir.1993) (defendant's "only interest was that the airline, as his bailee, would place his luggage on the next plane, which was to leave about two hours after his plane. The entire process of removing the luggage from the cart, taking

---

1. 4 W. LaFave, Search and Seizure § 9.7(e), at 364–365 (1996) (noting that, "[s]uch is the case, for example, when the luggage of a bus or airline passenger, at a time when the luggage is not in the immediate presence of the passenger, is moved slightly to facilitate sniffing by a drug dog and the investigation does not delay the journey of the passenger or luggage") (footnotes omitted).

it from one office to the other, and having the dog sniff it, was completed prior to the time the luggage would have been placed on the airplane"); *United States v. Graham*, 982 F.2d 273, (8th Cir.1992) (following *Harvey;* no Fourth Amendment violation where police moved suitcase from overhead luggage rack to the aisle of bus to facilitate a dog sniff); *United States v. England*, 971 F.2d 419 (9th Cir.1992) (rejecting defendant's argument that a seizure occurs any time mail is detained: "we need not consider whether the postal inspectors had reasonable and articulable suspicion to seize the package before they obtained the search warrants, because until the packages were searched pursuant to those warrants, no seizure occurred"); *United States v. Lovell*, 849 F.2d 910, 915 (5th Cir.1988) (removal of suitcases and compression of luggage not a seizure because no meaningful interference with the defendant's possessory interest in the bags); *United States v. Puglisi*, 723 F.2d 779, 787 (11th Cir.1984) ("a seizure of luggage qua seizure, with no deleterious effects on the air traveler, is simply not a fourth amendment issue"); *United States v. Goldstein*, 635 F.2d 356, 361–362 (5th Cir.1981) ("reasonable and articulable suspicion is not required before a DEA agent may use a canine trained in drug detection to sniff luggage in the custody of a common carrier"); *United States v. Wood*, 6 F.Supp.2d 1213, 1224–1225 (D.Kan.1998) (defendant's only possessory interest in Federal Express package was " 'the contract-based expectancy that the package would be delivered to the designated address' " within a reasonable time; court concluded that if the government's "assumed detention of the package for investigative purposes did not delay the likelihood or probability of its timely delivery, then there was no meaningful interference with the individual's possessory interest in it"); *United States v. Germosen–Garcia*, 712 F.Supp. 862, 871 (D.Kan.1989) ("Law enforcement officers need not possess a reasonable suspicion to subject a traveler's luggage to canine scrutiny when the luggage: (1) is not taken from the immediate possession of the traveler or from an area in which he has a legitimate privacy interest; and (2) the delay involved is brief and does not interfere with the traveler's plans"); *State v. Goodley*, 381 So.2d 1180, 1182 (Fla.App.1980) ("slight movement of [defendant's] unopened bag from the cart to the floor ... did not, even remotely, amount to a fourth amendment seizure").

In *United States v. LaFrance*, 879 F.2d 1 (1st Cir.1989), a Federal Express package was detained at 9 a.m. The Defendant expected the package by 11 a.m. Federal Express guaranteed delivery by noon. The Court concluded that an "interference" with that package that lasted until noon would not have implicated Fourth Amendment protection. *LaFrance*, 879 F.2d at 7, 10.

It can thus be seen that there is a continuum of circumstances which affect the decisions to be made by law enforcement officials when deciding whether to subject baggage or a package to a drug sniffing dog. At one end of the continuum, the effect of the activity of the governmental agent on the individual's possessory interests in the property is so incidental that the Fourth Amendment does not restrict the conduct in any way. At the other end of the continuum, the governmental actions are so extensive and intrusive as to constitute a seizure, and require that probable cause be established before such action be undertaken. As one moves farther from the first circumstance toward the other end of the continuum, a "detention" occurs, and the Government agent must possess some justified reasonable suspicion before the package may be further detained. Until that point is reached, no detention occurs, and no justification is required to enable a governmental agent to submit a package or a suitcase to an x-ray or the sniff of a drug-sniffing dog.

■ We do not read the recent case of *United States v. Johnson*, 171 F.3d 601 (8th Cir.1999) as creating new law in this

area. In *Johnson,* the dispute was not about whether a "detention" had occurred, but whether the familiar tests needed to justify a detention had been met. The facts which caused the Court to conclude that a detention had occurred are not outlined in the opinion. The Court simply begins with the statement that the government "intercepted and detained an Express Mail package" and then examines the facts as to whether the detention was justified.

> "The decision to characterize an action as a search is in essence a conclusion about whether the fourth amendment applies at all. *If an activity is not a search or seizure (assuming the activity does not violate some other constitutional or statutory provision), then the government enjoys a virtual carte blanche to do as it pleases.* The activity is 'excluded from judicial control and the command of reasonableness.'* Amsterdam, Perspectives on the Fourth Amendment, 58 Minn.L.Rev. 349, 393 (1974)."

*Horton v. Goose Creek Independent School District,* 690 F.2d 470, 476 (5th Cir.1982), *cert. denied,* 463 U.S. 1207, 103 S.Ct. 3536, 77 L.Ed.2d 1387 (1983), emphasized language cited with approval in *Lovell,* 849 F.2d at 912 (5th Cir.1988).

Applying the principles set forth above, we conclude that the interception of the Federal Express package and subsequent dog sniff in this case was not a detention for which any degree of reasonable articulable suspicion was required. The Federal Express receipt for the package indicates that "FedEx Priority Overnight" packages are to be delivered by the "next business morning." Government Exhibit 2. The entire process of separating the package, placing it among others, and subjecting it to a dog sniff was completed well prior to the time that the first available Federal Express delivery truck would have left the airport. But for Mindy's positive alert, the package would have been placed back in the stream of packages from which it was taken, and delivered at its appointed time. Even if the package were not placed on *that* truck, it could have been placed upon any other Federal Express delivery truck for timely production at 4035 Bloomington Avenue South that morning, as contractually promised.

The package was not detained until the positive dog sniff. Once the drug sniffing dog alerted to the package, the government was permitted to seize the package, since the alerting by the drug sniffing dog provided the probable cause for the seizure. The Eighth Circuit Court of Appeals has stated that "[a] dog's identification of drugs in luggage or in a car provides probable cause that drugs are present." *United States v. Bloomfield,* 40 F.3d 910, 918 (8th Cir.1994), *cert. denied,* 514 U.S. 1113, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995) (*citing Place,* 462 U.S. at 706, 103 S.Ct. 2637; *United States v. Stone,* 866 F.2d 359, 363 (10th Cir.1989)); *United States v. Dennis,* 115 F.3d 524, 531–32 (7th Cir.1997) ("if law enforcement authorities possess reasonable suspicion to believe that a package contains contraband, they may detain that package for a reasonable length of time while investigating the package," *citing Van Leeuwen,* 397 U.S. at 252–53, 90 S.Ct. 1029).

Before the government could inspect the *contents* of the package, however, they were required to obtain a warrant.

> "Even when government agents may lawfully seize such a package to prevent loss or destruction of suspected contraband, the Fourth Amendment requires that they obtain a warrant before examining the contents of such a package."

*Jacobsen,* 104 S.Ct. at 1657. A warrant was obtained in this case, based upon the Affidavit of Officer Giller, who recited the facts concerning the positive alert by the drug sniffing dog. Government Exhibit 1. The affidavit established probable cause for the issuance of the Warrant to search the package. When the contents were ex-

amined, the government found approximately four pounds of methamphetamine.

We recommend that the District Court deny Defendant's Motion to exclude this evidence found in the Federal Express parcel. The initial submission of the package to a sniff search by a drug sniffing dog was not a search, nor a seizure, nor a "detention" requiring justification. After the sniff by the dog, probable cause was established justifying detaining the package until a warrant could be obtained. Thereafter, a warrant was obtained, justifying the seizure of the package, and the search of the contents of the package.

Our conclusion makes it unnecessary for the government to establish that it possessed a reasonable suspicion which would have warranted a detention. We examine the issue in this opinion only because it will afford to the District Court full factual findings upon which to reach its ultimate decision. We conclude that on the evidence presented at the hearing, the government did not establish that it possessed a "reasonable suspicion based upon articulable facts that [the] package contain[ed] contraband." *Johnson*, 171 F.3d at 603.

There is no real dispute as to the factors which may be considered in making the determination, so long as ultimately "an officer possesses a 'particularized and objective basis' for suspecting that a package contains contraband, that is, more than an inchoate and unparticularized suspicion or 'hunch.' *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." *Johnson*, 171 F.3d at 603. The Court noted in *Johnson*, 171 F.3d 601 at 604: "Law enforcement officers are permitted to draw 'inferences and deductions that might well elude an untrained person.' [*United States v. Cortez*, 449 U.S. 411 at 418, 101 S.Ct. 690]." *** "Characteristics consistent with innocent use of the mail can, when taken together, give rise to reasonable suspicion. *See United States v. Sokolow*, 490 U.S. 1, 10, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (combination of innocent travel factors)."

The package at issue raised suspicion, the officers testified, because it was incorrectly addressed ("undeliverable"), the sender and intended recipient had the same last name; the air bill was marked "priority overnight;" the air bill did not contain an account number; the method of payment was not indicated; the air bill was handwritten; and the package was sent from Fullerton, California, a "source city."

Standing alone, the facts that the air bill was handwritten and was shipped from a "source" city are not particularly compelling. *See Johnson*, 171 F.3d at 605. Officer Giller pointed to no obvious misspellings which would indicate that the sender did not know the receiver. The package did not contain an account number, but Officer Giller's assertion that the method of payment was not clearly marked appears incorrect: box Seven of the package slip indicates that the "account no. in section 1 will be billed."

The package was "undeliverable" only in the fact that the handwritten address was "435 Bloomington, # 112, Minneapolis, MN 55407" and it should have read "4035 Bloomington, # 112, Minneapolis, MN 55407." Federal Express employees and the agents were able to ascertain the intended address based upon use of readily available commercial resources, and in fact delivered the package to that address. In addition, the air bill correctly listed the sender's name, address, city and zip code, so it would not have been impossible to trace the package to its sender.

Each case must be examined on its particular facts. We do not discount the experience of the officers in this case, but the record does not contain sufficient elaboration on the factors from their experience which would have warranted a seizure of this particular package, and we are unable to conclude that the factors identified from this particular label were sufficient to provide a reasonable suspicion of

criminal activity justifying a warrantless "detention" of the package.

### 3. *Good Faith Exception*

 Even if the package were detained or seized in violation of the Fourth Amendment, we must consider whether the good-faith exception to the exclusion of the evidence established in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) applies. The Eighth Circuit Court of Appeals "has held *Leon* applicable to the subsequent warrant-authorized search of a bag where the original detention violated the Fourth Amendment." *United States v. Fletcher,* 91 F.3d 48, 51 (8th Cir.1996), *cert. denied,* 520 U.S. 1121, 117 S.Ct. 1258, 137 L.Ed.2d 338 (1997), (*citing United States v. White,* 890 F.2d 1413, 1419 (8th Cir.1989), *cert. denied,* 498 U.S. 825, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990); *United States v. Kiser,* 948 F.2d 418 (8th Cir.1991), *cert. denied,* 503 U.S. 983, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992); *United States v. O'Neal,* 17 F.3d 239, 243 n. 6 (8th Cir.), *cert. denied,* 513 U.S. 960, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994)). To determine if the *Leon* exception applies in a case of this type:

> The relevant inquiry is whether the facts surrounding reasonable suspicion are "close enough to the line of validity" that the police officers were entitled to a belief in the validity of the warrant and the existence of reasonable suspicion. *White,* 890 F.2d at 1419. If the case presents such a "close" question, the *Leon* good faith exception to the exclusionary rule should be considered. *O'Neal,* 17 F.3d at 243 n. 6 (noting that this consideration is not automatic, rather "[i]t is the closeness of the particular facts that push[ed] this case into the gray area created by *Leon.*") (citation omitted).

*Fletcher,* 91 F.3d at 51. On balance, we find that police had an objectively reasonable belief "that they possessed a reasonable suspicion such as would support the valid detention of [the parcel] as well as an objectively reasonable belief that the warrant issued was valid." *Fletcher,* 91 F.3d at 52.

### B. *Search of 2930 18th Avenue*

### 1. *Factual Background*

At approximately 11:15 a.m. Officer Vitek conducted surveillance at the suspected delivery address of 4035 Bloomington Avenue South. He observed three Hispanic males, including Defendant Vasquez, seated inside a maroon Oldsmobile parked in front of the residence. Officer Vitek paid particular attention to these individuals because, based on his training and experience, he felt that they might have been waiting to intercept the package addressed to Santiago Quiroz. At approximately 11:45 a.m., Officer Vitek observed Vasquez drive the car to the rear of the residence, exit the vehicle, and enter the building. Shortly thereafter, Vasquez exited the building, re-entered the maroon Oldsmobile, and re-parked the car in front of the building. The maroon Oldsmobile continued to periodically drive through the immediate area of the residence located at 4035 Bloomington Avenue. Defendant's Exhibit 2.

At approximately 1:30 p.m., Officer Giller, dressed as a Federal Express delivery person, attempted to deliver the package to the address. Defendant Quiroz answered Officer Giller's knock on the door to Apartment # 112, and accepted the package. As Officer Giller delivered the package to Quiroz, Vasquez walked from the apartment building to a bowling alley across the street, where he met an unidentified individual driving the maroon Oldsmobile. The maroon Oldsmobile was then driven to the rear of the apartment building, at which time Vasquez and an unidentified male exited the vehicle and entered the building. A short time later, Vasquez exited the apartment building carrying a package similar to the Federal Express package delivered by Officer Giller. Vasquez placed the package in the trunk of the maroon Oldsmobile, drove it down the

alleyway, and parked in front of the apartment building. Quiroz and an unidentified Hispanic male then exited the apartment building. Quiroz entered a white Chevrolet station wagon, and the unidentified Hispanic male entered the maroon Oldsmobile, driven by Vasquez. Both cars pulled away from the apartment building and drove to 18th Avenue, where each vehicle parked for a short time. Quiroz exited the white station wagon and walked to the maroon Oldsmobile, where he spoke with Vasquez and the unidentified male. Quiroz re-entered the station wagon and both vehicles drove away.

Eventually, each vehicle returned to 18th Avenue. The white station wagon parked in the alleyway behind a residence identified at 2930 18th Avenue. The maroon Oldsmobile pulled into the driveway of this residence, and eventually into the garage. Quiroz exited the white station wagon and entered the upstairs apartment at 2930 18th Avenue, only to emerge a short time later. The white station wagon, now occupied by Quiroz and Vasquez, was then spotted as it drove up the alleyway. Police stopped the vehicle and arrested each occupant.

Officer Richard Palaia entered the residence at 2930 18th Avenue South. Two men, Juan Salinas and Louis Pacheco, were present in the Apartment. Each of these individuals spoke Spanish, so Officer Palaia attempted to locate a Spanish-speaking police officer. As officer Palaia did this, police located a "clipped" Minnesota Identification, a Social Security Identification card and a Residence Alien card baring Pacheco's name. The Social Security and Residence Alien cards were determined to be counterfeit.

Shortly thereafter, Officer Calvin Noble of the Minneapolis park Police Department arrived at the scene. Officer Noble is fluent in the Spanish language, and was able to communicate with Pacheco. Pacheco told Officer Noble that he lived at the residence, and gave police consent to search the residence and attached garage.

Officer Noble then produced a "Hennepin County Sheriff's Office Consent to Search" form for Pacheco's signature. Government Exhibit 3. Officer Noble did not read the form word for word to Pacheco, but explained that it provided police consent to search the residence and garage. Officer Noble and Pacheco each signed and dated the form. Police proceeded to search the home and garage. Inside the garage, police found the Federal Express package containing the drugs inside the trunk of the maroon Oldsmobile.

### 2. *Analysis*

Defendant moves to suppress evidence found in the trunk of the maroon Oldsmobile while it was parked in a garage located at 2930 18th Avenue South on the ground that Luis Pacheco did not have authority to consent to a search of the apartment or the car parked in the garage. The Government argues that Defendant does not have standing to challenge the search, that a warrant was not required to search the vehicle due to exigent circumstances; and that the automobile search was an inventory search pursuant to *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). We begin with the issue of "standing."

### a. Reasonable Expectation of Privacy in the Places Searched

The United States Supreme Court recently reiterated that "in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.' " *Minnesota v. Carter*, 525 U.S. 83, 119 S.Ct. 469, 472, 142 L.Ed.2d 373 (1998) (*quoting Rakas v. Illinois*, 439 U.S. 128, 140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). The Eighth Circuit Court of Appeals has set forth the following standard:

If a defendant fails to prove a sufficiently close connection to the relevant places

or objects searched he has no standing to claim that they were searched or seized illegally. *United States v. Sanchez,* 943 F.2d 110, 113 (1st Cir.1991). The defendant moving to suppress has the burden of proving a reasonable expectation of privacy in the area searched. *Rakas,* 439 U.S. at 130–31 n. 1, 99 S.Ct. at 423 n. 1; *United States v. Kiser,* 948 F.2d 418, 423 (8th Cir.1991). Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. *Sanchez,* 943 F.2d at 113.

*United States v. Gomez,* 16 F.3d 254, 256 (8th Cir.1994). We find that Defendant lacks a reasonable expectation of privacy in the apartment located at 2930 18th Avenue South and the maroon Oldsmobile parked inside its garage. No evidence of record establishes a possessory or ownership interest between Defendant and the residence. Unlike Co–Defendant Quiroz, Vasquez was never even observed entering the residence. There is no indication that Defendant resided at the residence, or was an overnight guest. Because Defendant has failed to show any relationship to 2930 18th Avenue South, he cannot challenge the evidence seized by police.

Nor has Defendant established a legitimate expectation of privacy in the maroon Oldsmobile. Defendant does not claim ownership of the vehicle. In fact, police established that the vehicle was not registered in Defendant's name. Absent an ownership interest in the vehicle, "the defendant must present at least some evidence of consent or permission from the lawful owner/renter to give rise to an objectively reasonable expectation of privacy." *United States v. Muhammad,* 58

F.3d 353, 355 (8th Cir.1995) (citations omitted) (no legitimate expectation of privacy where defendant presented no direct evidence that he had permission to use automobile). *See also United States v. Ponce* 947 F.2d 646, 649 (2d Cir.1991) ("fact that defendants were observed using the car does not establish their right to use the car. For example, the car might have been stolen"); *United States v. Sanchez,* 943 F.2d 110, 114 (1st Cir.1991) (defendant could not establish "a more intimate relationship with the car's owner or a history of regular use of the [car]"). In this case, Defendant has established at least a possessory interest in the maroon Oldsmobile, as Police observed Defendant driving the vehicle throughout much of the day. However, Defendant presented no direct evidence that he had any legitimate basis for being in the car. In the absence of such evidence, we conclude that Defendant failed to show a reasonable expectation of privacy in the maroon Oldsmobile, and should be prohibited from challenging the legality of its search.

#### b. Consent

 Even if Defendant did have an expectation of privacy in the residence and garage, we would reject his argument that the Government did not obtain valid consent to search the maroon Oldsmobile. The Fourth Amendment protection against unreasonable searches and seizures does not apply to situations in which voluntary consent has been obtained from the individual whose property is searched. *Stoner v. California,* 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). Thus, even in the absence of probable cause or a warrant, police officers may search an area if they obtain a voluntary consent from someone possessing adequate authority over the area. *United States v. Barahona,* 990 F.2d 412, 417 (8th Cir.1993). The government bears the burden of proving a voluntary consent to search by a preponderance of the evidence. *Id. (citing Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); *United States*

*v. Ramey,* 711 F.2d 104, 107 (8th Cir. 1983)); *United States v. Selberg,* 630 F.2d 1292 (8th Cir.1980).

A consent is voluntary if it is "the product of an essentially free and unconstrained choice by its maker," rather than "the product of duress or coercion, express or implied." *Schneckloth v. Bustamonte,* 412 U.S. 218, 225, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Barahona,* 990 F.2d at 417. Awareness of the right to refuse is not necessary for a consent to be voluntary. *Bustamonte,* 412 U.S. at 234–35, 93 S.Ct. 2041. Further, the voluntariness of a consent is a question of fact to be determined from the totality of the circumstances. *Id.* at 227, 93 S.Ct. 2041. Relevant to this determination are the following characteristics of the person giving consent and the environment in which consent is given: the age of defendant; his general intelligence and education; whether he was under the influence of a mind-altering substance; whether he was informed of his right to withhold consent or of his *Miranda* rights; the length of time he was detained and questioned; whether he was threatened, physically intimidated, or punished by the police; whether he relied upon promises or misrepresentations made by the police; whether he was in a public or secluded location; and whether he objected to the search or passively looked on. *Barahona,* 990 F.2d at 417; *United States v. Chaidez,* 906 F.2d 377, 381 (8th Cir.1990).

In this case, Officer Noble obtained consent for the search from Luis Gonzalez Pacheco. The evidence of record establishes that Officer Noble was able to satisfactorily communicate with Pacheco. Pacheco told Officer Noble that he lived at the residence, and provided verbal and written consent for the search. The record shows that Pacheco freely and voluntarily consented to entry into the residence. *United States v. Magness,* 69 F.3d 872, 874 (8th Cir.1995) ("Even when police officers have neither probable cause nor a warrant, they may search an area if they obtain a voluntary consent from someone possessing adequate authority over the area.").

Defendant nonetheless argues that "although Pacheco had authority to consent to the search of his residence, he lacked authority to consent to the search of the vehicle, which was merely present on the premises." Defendant's Memorandum, at 5. We disagree, and find that Pacheco possessed adequate authority to consent to the search of the maroon Oldsmobile parked inside the garage.

"The government may obtain consent for a warrantless search from the defendant or 'from a third party who posse[s] common authority over or other sufficient relationship to the premises or effects sought to be inspected.'". *United States v. Czeck,* 105 F.3d 1235, 1239 (8th Cir.1997) *quoting United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). "The relevant inquiry is whether the facts available would have justified a reasonable officer in the belief that the consenting party had authority over the premises." *Czeck,* 105 F.3d at 1239 (*citing Illinois v. Rodriguez,* 497 U.S. 177, 188, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990)).

In this case, Pacheco consented to a search of "2930 18th Av. So. # 2 Mpls MN and garage belonging to 2930 18th Av. So. # 2 Mpls MN." The consent form did not expressly withhold consent from any area located within the premises, nor did Pacheco verbally instruct police not to search the maroon Oldsmobile. Defendant argues that Pacheco could not consent to a search of the maroon Oldsmobile because there is no proof that he either owned the vehicle or had joint control over it. This argument lacks merit, especially since police knew that neither Defendant was the registered owner of the vehicle. Evidence derived from the search of the residence and garage located at 2930 18th Avenue South was lawfully gathered through the

consent of Pacheco. Consequently, such evidence should not be suppressed.

### c. Automobile Exception

■ Independent of the consent given by Pacheco, police possessed probable cause to search the maroon Oldsmobile pursuant the "automobile exception" to the warrant requirement. "Once probable cause is established, a car can be searched without a warrant under the automobile exception to the warrant requirement." *United States v. Bloomfield*, 40 F.3d 910, 919 (8th Cir.1994) (en banc), *cert. denied*, 514 U.S. 1113, 115 S.Ct. 1970, 131 L.Ed.2d 859 (1995). "In such circumstances, the police may search every part of the car and its contents that may conceal the object of the search." *United States v. Payne*, 119 F.3d 637, 642 (8th Cir.), *cert. denied* — U.S. —, 118 S.Ct. 454, 139 L.Ed.2d 389 (1997) (citations omitted). Probable cause does not require an actual showing of criminal activity, but only the " 'probability or substantial chance' " of such activity. *Payne*, 119 F.3d at 642 (*quoting Illinois v. Gates*, 462 U.S. 213, 234–44 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Accordingly, police possess probable cause for a search " 'where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found.' " *Payne*, 119 F.3d at 643 (*quoting Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 1661, 134 L.Ed.2d 911 (1996)).

■ In this case, Co–Defendant Quiroz accepted delivery of a package at 4035 Bloomington Avenue South which was known to contain methamphetamine. Police observed Vasquez enter this residence carrying nothing, and emerge carrying a package similar to the Federal Express package containing contraband. Vasquez placed this package into the trunk of the maroon Oldsmobile, and eventually drove to 2930 18th Avenue South. Police then witnessed Quiroz exit a separate vehicle and enter the residence. Quiroz and Vasquez then entered a white station wagon and drove away. Officers did not see either individual carry the package when they left. Based upon these observations, police possessed probable cause to search the maroon Oldsmobile without a warrant when they discovered it inside the garage belonging to 2930 18th Avenue South. *United States v. Payne*, 119 F.3d 637, 643 (8th Cir.), *cert. denied* — U.S. —, 118 S.Ct. 454, 139 L.Ed.2d 389 (1997) (probable cause for warrantless search of automobile where police observed individual place suitcase which was believed to contain drugs into trunk of car).

■ Because we find that police has probable cause to search the maroon Oldsmobile without a warrant, we do not reach the Government's argument that the search was a valid inventory search. In passing, however, we note that "[i]nventory searches are reasonable when they are conducted according to standardized police procedures." *United States v. Mayfield*, 161 F.3d 1143, 1144 (8th Cir.1998), *cert. denied*, — U.S. —, 119 S.Ct. 1348, 143 L.Ed.2d 510 (1999) (citation omitted). The Government made no attempt to demonstrate that the search of the automobile was conducted according to any standardized procedure, thus leaving the Court unable to conduct a full analysis of this issue.

### III. *Motion to Suppress Statements*

#### A. *The Motion Should be Denied for Procedural Reasons*

■ We recommend that Defendant's Motion for Suppression of all statements [Docket No. 31] be denied on the ground that Defendant did not comply with the procedural requirements for this Motion. In motions to suppress evidence, a moving party must specify the statement or evidence which is sought to be suppressed, and articulate with clarity the factual and legal basis upon which each is sought to be suppressed. If this is done, and no genuine factual issues are raised, the Court may resolve the motions based on the moving papers, with oral argument

if desired. If the Defendant also raises genuine issues of fact relating to the legal objections, a hearing will be held. *See e.g. United States v. Losing*, 539 F.2d 1174, 1177 (8th Cir.1976), *cert. denied*, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977) (*quoting United States v. Ledesma*, 499 F.2d 36, 39 (9th Cir.), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974)); *United States v. Mims*, 812 F.2d 1068, 1074 (8th Cir.1987). These requirements were made specific in the Order of this Court dated March 8, 1999 [Docket No. 12].

Defendant's moving papers regarding his Suppression Motion do not satisfy the specificity requirement. The Motion is boilerplate in form. It merely requests suppression of all statements made by Defendant. The Motion does not specify the statements Defendant seeks to have suppressed, nor the specific legal and factual grounds for the objections. As a result, no hearing was required, and the Motion should be denied based upon the pleadings.

### B. *The Motion should be Denied on its Merits*

Defendant moves to suppress a statement made to police on February 5, 1999, immediately following his arrest. At the April 27, 1999 hearing, the Government indicated that it did not intend to use this statement as part of its case in chief at Defendant's trial. "The key inquiry with respect to the admission of inculpatory statements for the limited purpose of impeachment is the question of whether the statements were voluntary and not coerced." *United States v. Martin*, 974 F.Supp. 677, 679 (C.D.Ill.1997) (*citing Oregon v. Hass*, 420 U.S. 714, 722, 95 S.Ct. 1215, 1220–21, 43 L.Ed.2d 570 (1975); *United States ex rel. Adkins v. Greer*, 791 F.2d 590, 596 n. 5 (7th Cir.1986) (holding that the key inquiry with respect to the admission of inculpatory statements as impeachment is the issue of voluntariness)).

"The appropriate test for determining whether a statement or confession is voluntary is whether the alleged statement or confession was 'extracted by threats, violence, or direct or indirect promises, such that [a person's] will is overborne and his [or her] capacity for self-determination critically impaired.' " *United States v. Gipp*, 147 F.3d 680, 683 (8th Cir.1998) (*quoting United States v. Kilgore*, 58 F.3d 350, 353 (8th Cir.1995) (*citing Sumpter v. Nix*, 863 F.2d 563, 565 (8th Cir.1988) (internal citation omitted)). These factors are critical, because "[a] confession may not be found involuntary absent some type of coercive activity on the part of law enforcement officials." *United States v. Kime*, 99 F.3d 870, 880 (8th Cir. 1996), *cert. denied*, 519 U.S. 1141, 117 S.Ct. 1015, 136 L.Ed.2d 892 (1997) (*citing Russell v. Jones*, 886 F.2d 149, 151 (8th Cir. 1989)). Also critical to this determination are the statutory factors enumerated in 18 U.S.C. § 3501(b).

An examination of the totality of the circumstances is devoid of any findings of coercive efforts by law enforcement rising to the level of overcoming Defendant's will to make a voluntary statement. Officer Noble testified that he spoke to Defendant after his arrest, and while he was seated in a police car. He did not give Defendant a *Miranda* warning, and simply translated questions asked by other police officers. In the absence of evidence to the contrary, the Court accepts Officer Noble's assertions that no threats or promises were made to Defendant, and no coercive tactics were employed. He further stated that Defendant did not invoke his right to remain silent, did not ask for an attorney, and appeared coherent, and free from intoxicating substances. Given these circumstances, we find that Defendant's statement was voluntarily made, and recommend that it be admissible for impeachment purposes during his trial.

### IV. *Motion for Severance of Defendants*

Defendant moves for severance on the grounds that "there is a serious risk that a

joint trial would prevent the jury from making a reliable judgement about guilt or innocence." We recommend that Defendant's Motion for Severance be denied in this case involving a number of Co–Defendants allegedly acting within the same drug distribution conspiracy.

■ Where multiple defendants are jointly indicted for multiple offenses, the court applies Rule 8(b) of the Federal Rules Criminal Procedure. *See United States v. Jones,* 880 F.2d 55, 60–61 (8th Cir.1989). Rule 8(b) provides that two or more defendants may be charged in the same indictment if they are alleged to have participated in the same transaction or series of transactions constituting an offense or offenses. Fed.R.Crim.P. 8(b). The Eighth Circuit has held that the misjoinder of defendants is inherently prejudicial and the district court has no discretion to deny severance of such defendants. *United States v. Bledsoe,* 674 F.2d 647, 654 (8th Cir.), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 456, 74 L.Ed.2d 608 (1982). The propriety of joinder must appear on the face of the indictment. *Id.* at 655.

■ "The prerequisites for joinder of defendants under rule 8(b) should be liberally construed. A broad reading of rule 8(b) is justified because Fed. R.Crim.P. 14 provides a means by which trial courts can protect defendants from prejudice resulting from joint trials." *Bledsoe,* 674 F.2d at 655 (*citing Williams v. United States,* 416 F.2d 1064, 1069 (8th Cir.1969)). "Rule 8(b) requires that there be some common activity involving all of the defendants which embraces all the charged offenses even though every defendant need not have participated in or be charged with each offense." *Bledsoe,* 674 F.2d at 656 (citation omitted). The facts here suggest a common scheme that connects all the defendants, which is a conspiracy. Defendant and his alleged Co–Defendants are all charged with Conspiracy to possess with the intent to distribute controlled substances in violation of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B).

■ Where defendants are indicted together and charged with a single conspiracy, the general rule in the federal system is that a defendant and his coconspirators should be tried together. *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *United States v. Stephenson,* 924 F.2d 753, 761 (8th Cir.1991), *cert. denied* 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991) (it will rarely be improper for co-conspirators to be tried together); *United States v. Kime,* 99 F.3d 870, 880 (8th Cir.1996), *cert. denied,* 519 U.S. 1141, 117 S.Ct. 1015, 136 L.Ed.2d 892 (1997); *United States v. Houston,* 892 F.2d 696, 703 (8th Cir.1989) (joinder proper where "indictment charged all of the defendants with participation in a single conspiracy and charged several of the defendants with various substantive counts arising from the same conspiracy"). Joinder of defendants is proper in this case, as Count I relates to a conspiracy involving Defendant and his Co–Defendant.

■ Under Rule 14 of the Federal Rules of Criminal Procedure, the court may order separate trials if it appears that a defendant is prejudiced by a joinder of defendants at trial. A court "should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 534, 113 S.Ct. 933. A showing that a defendant's chances of acquittal would have been more favorable if he or she had been tried alone is not sufficient to justify severance. *Kime,* 99 F.3d at 880. The defendant must show that joinder prejudiced his or her right to a fair trial. 99 F.3d at 880. An example of prejudice includes a situation where "evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty." *Id.* at 539, 113 S.Ct. 933.

Defendant's speculative allegations of prejudice do not amount to the "showing of real prejudice" which is required before severance is mandated. *United States v. Garrett,* 961 F.2d 743, 746 (8th Cir.1992); *United States v. Givens,* 712 F.2d 1298, 1300 (8th Cir.1983), *cert. denied,* 465 U.S. 1009, 104 S.Ct. 1005, 79 L.Ed.2d 237 (1984). Severance is not required "simply because evidence may be admissible as to one defendant but not as to another." *United States v. Helmel,* 769 F.2d 1306, 1322 (8th Cir.1985). Furthermore, as discussed above, because a conspiracy is involved, joinder of all defendants is appropriate in this matter. We recommend that Defendant's Motion for Severance of Defendants [Docket No. 28] be denied.

## RECOMMENDATION

Based upon all of the files, records, and proceedings herein,

IT IS HEREBY RECOMMENDED THAT:

1. Defendant's pretrial Motion to Suppress Identifications of Defendant [Docket No. 32] be denied as moot based on the representations of the Government.

2. Defendant's pretrial Motions for Severance of Defendants [Docket No. 28]; to Suppress Physical Evidence Obtained as a Result of any Illegal Searches or Seizures [Docket No. 30]; and to Suppress Statements Made by Defendant [Docket No. 31] be denied.

May 27, 1999.